UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

HRV SANTA FE, LLC,

     Plaintiff,

v.                                                                                    Adv. Proc. 24-01002-t

JAY WOLF; JUNIPER INVESTMENT
ADVISORS, LLC; JUNIPER REAL ESTATE,
LLC; JUNIPER CAPITAL PARTNERS, LLC;
JUNIPER BISHOPS MANAGER, LLC; JUNIPER
BISHOPS, LLC; JUNIPER BL HOLDCO, LLC; and
JUNIPER BL PROPCO, LLC; ALEX WALTER;
BRAD BROOKS; and MICHAEL NORVET;

     Defendants,

BL SANTA FE (HOLDING), LLC,

     Nominal Defendant.


## **OPINION**

Before the Court is Plaintiff's motion to remand this removed adversary proceeding to state

court or, alternatively, to abstain from hearing it. The contested matter has been fully briefed and

argued. The Court finds that the motion is not well taken and will be denied.

A.    <u>Facts</u>.[1]

For the limited purpose of ruling on the motion, the Court finds:

---

[1] The Court took judicial notice of the docket in this case and the Delaware bankruptcy case of BL
Santa Fe, LLC, et al 21-11190 (MFW). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins.
Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (approving such judicial notice); *In re Mailman Steam
Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (same). For background prepetition facts, the
Court takes allegations from Plaintiff's original complaint.

<u>Bishops Lodge in Santa Fe, New Mexico</u>

This dispute involves the Bishops Lodge resort and hotel in Santa Fe, New Mexico (the "Resort"). Before 2021, the Resort was owned and operated by BL Santa Fe, LLC ("Resort Owner"). Resort Owner, in turn, was wholly owned by BL Santa Fe (Mezz), LLC ("Mezz"), which is wholly owned by BL Santa Fe (Holding), LLC ("Holding"). Holding is owned principally by four members: Evolution RE Bishops Lodge, LP ("Evolution"); Nunzio DeSantis ("DeSantis"); BL Resort Investment, LLC ("BL Resort Investment"); and HRV Santa Fe, LLC ("HRV") (together, the "Members"). Evolution, DeSantis, and BL Resort Investment own more than half of the membership interests in Holding (together, the "Majority Members"). Ownership can be diagrammed as follows:



From 2017 to December 16, 2020, HRV was the manager of Holding, Mezz, and Resort Owner. HRV is owned and controlled by Richard Holland.

<u>Senior and Mezzanine Loans</u>

Fortress Credit Co. LLC (together with its successors and assigns, "Senior Lender") made a loan to Resort Owner (the "Senior Loan"). The Senior Loan was secured by the assets of Resort Owner.

On or about June 14, 2019, Juniper Bishops, LLC ("Juniper Bishops" or "Mezzanine Lender") made a $15,000,000 "mezzanine" loan to Mezz (as modified, the "Mezzanine Loan," and together with the Senior Loan, the "Secured Loans") to fund renovation of the Resort (the "Project"). The Mezzanine Loan was secured by Mezz's 100% membership interest in Resort Owner.

<u>Events Leading to the Bankruptcy Cases</u>

The Project fell behind schedule and was over budget. Concerns about defaulting on the Secured Loans arose in mid-2020. On or about December 15, 2020, the Majority Members voted their membership interests to amend the First Amended BL Holding Limited Liability Company Agreement and to remove HRV and Mr. Holland from their positions as officers and managers of Holding, Mezz, and Resort Owner. On or about December 16, 2020, the Majority Members appointed a board of managers comprised of Brad Brooks, Michael Norvet, DeSantis, and Alex Walter (the "Board of Managers").

Mr. Holland and HRV disputed their removal from management. They contended that the attempted removal was contrary to the governing corporate documents and was therefore void. Mr. Holland refused to acknowledge the new governing structure of Holding and continued to hold himself out to third parties as the manager and controlling officer of Holding, Mezz, and Resort Owner.

In January 2021, Holland, Juniper Bishops, and the Board of Managers understood that additional capital would be required to fund completion of the Project. Holding's members were unwilling or unable to contribute additional equity, so they looked for a replacement lender(s). One prospective lender/investor was Andrew Blank, who stated that he was interested in infusing equity into the Project and paying off Juniper Bishops. Another prospective lender/investor was Juniper Bishops itself, which offered a term sheet to refinance the project in February of 2021.

In April 2021, Juniper Bishops submitted an updated term sheet (the "April Term Sheet"). The April Term Sheet was signed by the Majority Members but not by Mr. Holland or HRV.

Also in April, Holland on behalf of HRV signed a term sheet with Mr. Blank, on behalf of Holding (the "Blank Term Sheet"). None of Holding's Board of Managers signed the Blank Term Sheet. Upon learning of the Blank Term Sheet, Juniper Bishops withdrew the April Term Sheet because of difficulty in obtaining title insurance and, consequently, financing.

On April 7, 2021, Juniper Bishops declared that Mezz was in default on the Mezzanine Loan. On April 19, 2021, Juniper Bishops gave notice that it would foreclose and sell its sole collateral, the 100% membership interest of Resort Owner, at a public sale. Mezz told Juniper Bishops it was prepared to file bankruptcy if the sale was not postponed. Juniper Bishops postponed the sale several times.

<u>The Bankruptcy Cases</u>

On August 30, 2021, Resort Owner and Mezz filed voluntary chapter 11 cases in the United States Bankruptcy Court for the District of Delaware, commencing jointly administered chapter 11 cases (the "Bankruptcy Cases"). On the petition date, the debtors filed a motion for approval of debtor-in-possession financing and related relief (the "DIP Financing Motion"). In accordance

with the DIP Financing Motion, Juniper Bishops agreed to provide Mezz with postpetition financing of about $5,800,000, to fund the Debtors' operations during the Bankruptcy Cases.

On September 16, 2021, HRV objected to the DIP Financing Motion. HRV proposed to replace the DIP financing from Juniper Bishops with a purported 0% interest loan (but with a 15% default interest rate) provided by Mr. Blank.

The Delaware bankruptcy court held two hearings on the DIP Financing Motion and HRV's objection. Ultimately, the court overruled HRV's objection and granted the DIP Financing Motion.

### The Plan and Disclosure Statement

On the petition date, the debtors filed a joint plan of reorganization and a joint disclosure statement. On October 14, 2021, the debtors filed an amended plan of reorganization (the "Plan"). The Plan generally provided for Mezz to convey 100% of the membership interest in Resort Owner to Juniper BL HoldCo, LLC ("JBL HoldCo"). In return, the Mezzanine Loan would be deemed paid in full; JBL HoldCo would finance the completion of the Resort renovations and its operations; the Senior Loan would be restructured; and Mezz, Juniper Bishops, and JBL HoldCo would sign an equity participation agreement, under which Mezz would be entitled to receive certain "back-end distributions."[2] In addition, Mezz agreed to hold Juniper Bishops and JBL HoldCo harmless from all claims and suits relating to or arising out of the Plan and the Bankruptcy Cases.

_____

[2] In very general terms, the equity participation agreement provides that if profits are sufficient or the Resort is sold, Mezz would receive a distribution of 70% of the net profits/sale proceeds, after deducting the total of the loans and other capital contributions of Juniper, including accrued interest thereon of 30% APR; provided further that the payment to Juniper must be at least 190% of its total loans and capital contributions.

Under the Plan, Mezz released its claims against Juniper Bishops, its affiliates, and Debtors' management. Holding did not release any claims. Holding's membership interest in Mezz was separately classified and Holding was allowed to retain it.

All classes entitled to vote on the Plan accepted it. Holding's equity interest was deemed unimpaired, so it did not get to vote.

On October 8, 2021, HRV objected to confirmation of the Plan. It argued:

> The Debtors' execution and implementation of the [Restructuring Support Agreement][3], without consideration of other alternatives that offer a better return for the estate and all stakeholders . . . [is a] dereliction of duty to the estate and its stakeholders . . . .
>
> Mr. Blank put forward an objectively better plan with committed equity and debt financing, including a 0% interest unsecured DIP Loan. . . .
>
> A reasonable fiduciary would have used Mr. Blank's proposal to push the Mezzanine Lender to improve its terms; these Debtors have not. A reasonable fiduciary would have communicated with equity participants how it concluded that the current Plan is superior to Mr. Blank's plan; these Debtors have not. . . . [and]
>
> [The Debtors'] failure to consider better alternatives persists to this day. The Debtors received Mr. Blank's competing proposal weeks ago, but have failed meaningfully to engage with Mr. Blank. Instead, for reasons that the Debtors fail to disclose, they are continuing forward with a flawed proposal without disclosing to the constituents and mom and pop investors the existence of a proposal that would provide the likelihood of meaningful results for equity in the reorganized debtor.

<u>The Confirmation Hearing</u>

To prepare for the confirmation hearing, HRV took several depositions. On October 19, 2021, Judge Walrath held an evidentiary hearing on confirmation of the Plan. The court heard testimony from five witnesses—Messrs. Mack, DeSantis, Wolf, and Blank, and the debtors' expert witness, Dr. Scott Hakala. HRV's counsel actively participated in the confirmation hearing. He

---

[3] An agreement signed by Juniper Bishops, the Board of Managers, and others shortly before the Bankruptcy Cases were filed, outlining the terms of the restructuring (the "RSA").

cross-examined Messrs. Mack, Wolf, Hakala, and DeSantis. In addition, HRV's counsel called Mr. Blank to testify.

During closing argument, HRV's counsel argued that the court should not confirm the Plan because the debtors did not act in good faith in discharging their fiduciary duties:

> So I think what that tends to go to, Your Honor, is the Debtors' good faith in discharging their fiduciary duties in having what they tried to portray to Your Honor as a good process, and I'm not sure that process really got there. . . . The Debtors, for instance, never countered any of Mr. Blank's terms . . . .

At the conclusion of the hearing, Judge Walrath ruled that "the Debtors' conclusion to proceed with the Plan, which is based on the RSA, meets its fiduciary duty because it is the highest and best path forward for the Debtor to restructure the Debtors' principal asset, the Resort." The court found that the Blank alternative proposal was inferior to the transaction proposed through the Plan. Specifically, the court stated:

> Based on the evidence presented, I am convinced that the competing proposal submitted by Mr. Blank has serious drawbacks, which does make it less attractive, not simply as evidenced by the Debtors' conclusion, the vote by creditors and equity, but from the Court's own analysis based on the testimony and exhibits presented.

The court overruled HRV's objection and confirmed the Plan on October 21, 2021, pursuant a written confirmation order that incorporated the court's oral findings of fact and conclusions of law made two days before. In the confirmation order, the court found:

> The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, this Court has considered the totality of the circumstances in these Chapter 11 Cases, the Plan itself and the process leading to its formulation and proposal. The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors and their principal creditor constituencies, reflects substantial input from such constituencies, and achieves the goal of reorganization embodied by the Bankruptcy Code.

The court also ruled that "all Objections to the approval of the Disclosure Statement or confirmation of the Plan and any reservation of rights contained therein . . . are hereby

OVERRULED in their entirety and on their merits for the reasons set forth on the record of the Confirmation Hearing . . . ."

The confirmation order states that "the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interest (irrespective of whether such Claims or Interests are deemed to have accepted the Plan) . . . ." The confirmation order retained for the Delaware bankruptcy court "exclusive jurisdiction over all matters arising out of, or related to, the Bankruptcy Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . . ." The Plan became effective on October 29, 2021, and has been substantially consummated.

<u>The Derivative Action, Removal, and Motion to Remand or Abstain</u>

Plaintiff filed this proceeding on December 15, 2023, in the First Judicial District Court, State of New Mexico. In its derivative complaint, Plaintiff asserted three causes of action against the Defendants: that Juniper Bishops breached fiduciary duties to Holding (Count I); that Juniper Bishops aided and abetted the Majority Members' breaches of fiduciary duty to Holding (Count II); and that all Defendants entered into a civil conspiracy to marginalize, circumvent, and damage Plaintiff by favoring the Juniper Bishops' restructuring proposal rather than Mr. Blank's (Count III). As a result of the alleged unlawful actions, Plaintiff alleged that it was damaged because Mezz lost all the equity value in Resort Owner. In its prayer for relief Plaintiff asked for damages, including punitive damages, and for an order that the Juniper defendants "disgorge all payments received by them from any party including BL Holding, BL Mezz, BL Santa Fe, and/or any

members of BL Holding, for work performed in connection with the redevelopment of the Bishop's Lodge resort."[4]

The complaint describes the Bankruptcy Cases, the competing refinancing proposal made by Andrew Blank, the Plan, the confirmation battle, and Judge Walrath's confirmation order.

Defendants removed the state court action to this Court on January 12, 2024. Plaintiff filed the motion to remand/abstain 19 days later.

On February 9, 2024, Plaintiff filed an amended complaint that added two additional counts—a tortious interference claim against Juniper Bishops and a breach of fiduciary duty against three new defendants—Messrs. Walter, Brooks, and Norvet.

The Bankruptcy Cases are still pending in Delaware.

B.   Plaintiff's First Argument: The Notice of Removal is Defective.

The procedure for removing a proceeding from state court is to

… [F]ile in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

§ 1446(a).[5]

Plaintiff argues that Defendants' notice of removal is defective because it bases federal court jurisdiction on Plaintiff's alleged impermissible collateral attack on the Bankruptcy Cases and Plan confirmation. Plaintiff asserts that the "well pleaded complaint" rule, which requires that Defendants cite to the allegations of the complaint as the record that controls the validity of the

_____

[4] The Court finds that the disgorgement request seeks, inter alia, the return of the membership interest in Resort Owner, which Plaintiff elsewhere described as a "payment in kind" on Juniper Bishop's loan.

[5] Unless otherwise stated, all statutory references are to 28 U.S.C.

removal,[6] means that Defendants' reliance on preclusive defenses fails.[7] And because, Plaintiff argues, Defendants' position on collateral attack does not confer federal jurisdiction, the notice of removal is defective.

Plaintiff's argument must be overruled. In the notice, Defendants allege that "Plaintiff's Derivative Complaint *arises in, arises under, or is otherwise related to* the Chapter 11 Cases and is, therefore, removable under 28 U.S.C. § 1452(a) . . . ." (emphasis added). Defendants give one example: "*among other things* . . . ." the derivative complaint seeks to, "in essence, unwind the Plan and collaterally attack the Confirmation Order." (emphasis added). This open-ended language does not limit Defendants' basis for removal to the alleged "impermissible collateral attack." It is a nonexclusive example of the federal court's jurisdiction under § 1334(b).

The cases Plaintiff cites in support of its position are distinguishable; they deal with instances where the removing party first alleged one basis for federal court jurisdiction (i.e., federal question) but then, after the removal deadline has passed, alleged a different basis (i.e., diversity jurisdiction). *See, e.g., Zamora v. Wells Fargo Home Mortg.*, 831 F. Supp. 2d 1284, 1303 (D.N.M. 2011) (removing party, which based removal on federal question jurisdiction, was prevented from amending the notice of removal to allege diversity jurisdiction); and *USX Corp. v. Adriatic Ins. Co. et al.*, 345 F.3d 190, 205 (3d Cir. 2003) (to the same effect). Here, the notice of removal is

---

[6] *See, e.g., Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See *Gully v. First National Bank,* 299 U.S. 109, 112–113, 57 S. Ct. 96, 97–98, 81 L. Ed. 70 (1936).").
[7] Plaintiff has a similar complaint about Defendants' "complete preemption" argument. Because complete preemption is not mentioned in the notice of removal, however, it is not germane to Plaintiff's objection to the notice of removal.

proper because it is based on the district court's arising under, arising in, or related to jurisdiction. *See* § 1334(b). The alleged basis for jurisdiction never changed.

Plaintiff also argues that the "Background" portion of the notice is deficient. The argument lacks merit. The removal notice, which is 11 pages, more than satisfies the simple requirement of a "short and plain statement of the grounds for removal. . . ." § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure 8(a)." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). In the legislative history of § 1446(a), Congress had expressed disapproval of requiring detailed pleadings. *Id*.

Plaintiff's first argument must be overruled.

C.    Plaintiff's Second Argument: The Court Must Remand the Proceeding Because it Lacks Subject Matter Jurisdiction.

Plaintiff removed the proceeding pursuant to § 1452(a), which provides:

A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

§ 1452(a).  Section 1334 provides:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
. . .

Plaintiff argues that the district court lacks subject matter jurisdiction under § 1334, so the state court action was improperly removed and must be remanded.

1.      <u>The propriety of removal is judged on the removed complaint</u>. The Tenth Circuit

held in *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484 (10th Cir. 1991):

> … the propriety of removal is judged on the complaint as it stands at the time of
> the removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 349, 83 L.
> Ed. 334 (1939) (right to remove is determined according to plaintiff's pleadings at
> the time of the petition for removal); *Swanigan v. Amadeo Rossi, S.A.*, 617 F. Supp.
> 66, 67 (E.D.Mich.1985) (same); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*,
> 303 U.S. 283, 294, 58 S. Ct. 586, 593, 82 L. Ed. 845 (1938) (barring post-removal
> amendment to lower amount in controversy below federal court's jurisdictional
> limit).

*Id.* at 1488-89; *see also New Mexico Top Organics—Ultra Health, Inc. v. Blue Cross and Blue*

*Shield of New Mexico*, 2024 WL 260935, at *4-5 (D.N.M.), adopted, 2024 WL 1345638 (D.N.M.)

(same). If the basis of federal court jurisdiction is a federal question, then amending the complaint

to remove the federal question claim does not eliminate the federal court's supplemental

jurisdiction over the remaining state law claims. In *Gilmore v. Bank of New* York, 2009 WL

2031736 (S.D. Cal.), the court explained:

> Plaintiffs' argument that the Court should remand the case pursuant to 28 U.S.C.
> § 1447(c) because they have abandoned their federal cause of action misstates the
> applicable legal rule. Section 1447(c) provides, "[i]f at any time before final
> judgment it appears that the district court lacks subject matter jurisdiction, the case
> shall be remanded." 28 U.S.C. § 1447(c) (2009). Notwithstanding this rule, removal
> jurisdiction based on a federal question is determined from the complaint as it
> existed *at the time of removal. Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213
> (9th Cir. 1998). Therefore, when removal, as in this case, is based on federal-
> question jurisdiction and all federal claims are eliminated from the lawsuit, "[i]t is
> generally within a district court's discretion either to retain jurisdiction to adjudicate
> the pendent state claims or to remand them to state court ." *Harrell v. 20th Century
> Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991); *see also Albingia Versicherungs A.G. v.
> Schenker Int'l Inc.* 344 F.3d 931, 938 (9th Cir. 2003) ("[S]ection 1447(c) [the
> 'procedure after removal statute'] means that if it is discovered at any time in the
> litigation that there is no federal jurisdiction, a removed case must be remanded to
> the state court rather than dismissed. Section 1447(c) does not mean that if a facially
> valid claim giving rise to federal jurisdiction is dismissed, then supplemental
> jurisdiction is vitiated and the case must be remanded. Once supplemental
> jurisdiction exists, it remains, subject to the discretionary provision for remand in
> section 1441.") Accordingly, because Plaintiffs have abandoned their federal claim,

the Court must exercise its discretion to determine whether to retain supplemental jurisdiction over the remaining state claims.

*Id.* at *2; *see also Rockwell Int'l Corp v. United States*, 549 U.S. 457, 474 n.6 (2007) (amending the complaint after removal to delete the federal claims does not divest the district court of jurisdiction). The Court will consider Plaintiff's original complaint when deciding Plaintiff's motion to remand/abstain.[8]

    2.    <u>Bankruptcy court jurisdiction</u>. Section 1334(b) provides:

> Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

Discussing this statute, the Court stated in *In re Narro*, 2012 WL 4027258 (Bankr. D.N.M.):

> Bankruptcy Court jurisdiction is established by 28 U.S.C. § 1334, which lists four types of matters over which the district court has bankruptcy jurisdiction: 1) cases "under" title 11 (which are the bankruptcy cases themselves, initiated by the filing of a Chapter 7, Chapter 11, etc. petition), 2) proceedings "arising under" title 11 (such as a preference recovery action under § 547), 3) proceedings "arising in" a case under title 11 (such as plan confirmation), and 4) proceedings "related to" a case under title 11 (such as a collection action against a third party for a pre-petition debt). *Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir.1987).

*Id.* at *9; *see also Jaramillo v. Thomas*, 2016 WL 9776557, at *2 (D.N.M.) (to the same effect); *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997) (same).[9]

---

[8] The outcome would not change if the Court considered plaintiff's amended complaint. The amended complaint, inter alia, attempts to create more distance between the claims asserted and the Bankruptcy Cases. It deletes the disgorgement request and refers to the bankruptcy cases less often. Nevertheless, the essential connection between the claims asserted and the Bankruptcy Cases remains. As Defendants argued during oral argument, without the Bankruptcy Cases and the confirmed Plan, Plaintiff would not have suffered quantifiable damages. It would be like suing a driver for negligence when he drove badly but did not hit you.

[9] The cases talk about bankruptcy rather than district court jurisdiction because the district courts have entered standing orders referring all bankruptcy cases and proceedings to the bankruptcy courts.

In enacting § 1334(b), "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995).

3.      "Arising under" jurisdiction. Bankruptcy courts have subject matter jurisdiction over claims that "arise under" title 11.

> A proceeding "arises under" the Bankruptcy Code if it asserts a cause of action created by the Code, such as exemption claims under 11 U.S.C. § 522, avoidance actions under 11 U.S.C. §§ 544, 547, 548, or 549, or claims of discrimination under 11 U.S.C. § 525.

*Midgard*, 204 B.R. at 771. "Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987); *see also In re Housecraft Industries USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002) (quoting *Wood*); and *Browning v. Levy*, 283 F.3d 761, 772-73 (6th Cir. 2002) ("arising under" jurisdiction exists where one invokes a substantive right created by federal bankruptcy law).

Defendants argue that Plaintiff's state law claims are "completely preempted" by the Bankruptcy Code, thus converting them into federal claims and giving the Court "arising under" jurisdiction.[10] In support of this argument Defendants cite *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir. 1996); *In re Miles*, 430 F.3d 1083 (9th Cir. 2005); and *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000).

The citation to *Pertuso* is inapposite; it deals with "ordinary" preemption, not "complete" preemption. *See Devon Energy Prod. v. Mosaic Potash Carlsbad*, 693 F.3d 1195, 1205 n. 4 (10th Cir. 2012) (discussing in some detail the difference between ordinary preemption, which is a

_____

[10] For a good description of the complete preemption doctrine, see *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992) (Easterbrook, J.).

defense and cannot be the basis for subject matter jurisdiction, and complete preemption, which converts state law claims to federal claims and therefore can be).

*MSR Exploration* and *Miles* apply the "complete preemption" doctrine to state law claims brought in connection with bankruptcy cases. In *MSR Exploration*, the Ninth Circuit stated:

> The major issue in this case is whether state malicious prosecution actions for events taking place within the bankruptcy court proceedings are completely preempted by federal law. If they are, it is clear that there is a federal question involved in this action, and that will establish the jurisdiction of the district court to rule upon the issue.

74 F.3d at 912. After reviewing the Bankruptcy Code, legislative history, and even one of the Federalist papers, the Ninth Circuit concluded that state law claims based on actions taken in bankruptcy cases are completely preempted by the Code:

> In arguing for the viability of its malicious prosecution action, MSR asks for a world where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding. . . . We hold that MSR's malicious prosecution action against the Producers is completely preempted by the structure and purpose of the Bankruptcy Code. Therefore, MSR's purported action must, in fact, be a federal claim.

*Id.* at 916.

Similarly, in *In re Miles*, 430 F.3d 1083 (9th Cir. 2005), plaintiffs asserted state law damages claims against creditors for an alleged wrongful filing of an involuntary bankruptcy petition. The Ninth Circuit held that the claim was completely preempted by § 303(i) of the Bankruptcy Code, thus giving the district court "arising under" subject matter jurisdiction over the claim. *Id.* at 1086.

No other circuit has held that the Bankruptcy Code or any particular section thereof completely preempts state law claims related to actions taken in bankruptcy cases. The Seventh Circuit discussed the issue in *In re Repository Technologies, Inc.*, 601 F.3d 710 (7th Cir. 2010):

> The Supreme Court has recognized only three federal statutes that completely preempt analogous state-law actions: § 301 of the Labor Management Relations Act, § 502(a) of the Employee Retirement Income Security Act, and §§ 85–86 of

the National Bank Act. *See Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 7–11, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003). We have likewise recognized the narrowness of the doctrine, applying complete preemption only where "Congress clearly intended completely to replace state law with federal law and create a federal forum." *Adkins,* 326 F.3d at 835 (quotation omitted). A prerequisite to complete preemption is identifying a federal cause of action that "includes the same ingredients as the state claim and provides some recovery." *Id.* (quotation omitted).

Examining the interplay between the Bankruptcy Code and Nelson's state-law claims of civil conspiracy and tortious interference, we cannot identify any Code provision that provides an "exclusive cause of action" for the defendants' alleged filing for bankruptcy for the unlawful purpose of enriching themselves. *Beneficial Nat'l Bank,* 539 U.S. at 8, 123 S. Ct. 2058. This lack of an express federal remedy indicates that Nelson's state-law claims are not completely preempted. *See Nelson v. Stewart,* 422 F.3d 463, 474 (7th Cir. 2005) (finding that a Code provision that designated a representative for the debtor's retirees in Chapter 11 proceedings, but that did not "purport to provide any federal cause of action for inadequate representation," did not completely preempt the retirees' state-law claims for unfair representation); *Adkins,* 326 F.3d at 835 (noting the absence of a federal cause of action under the Locomotive Inspection Act that would completely preempt the state tort claims of victims of a train collision).

*Id.* at 723.

The Tenth Circuit has not considered complete preemption with regard to the Bankruptcy Code. In *Devon Energy*, however, the court addressed whether the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181-196, completely preempted state law claims. After distinguishing complete and ordinary preemption, *Id.* at 1203, the court stated:

"Complete preemption is a rare doctrine," *Cmty. State Bank v. Strong,* 651 F.3d 1241, 1260 n. 16 (11th Cir. 2011), one that represents an "extraordinary pre-emptive power," *Taylor,* 481 U.S. at 65, 107 S. Ct. 1542. The circumstances are so rare in fact that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act. [citations omitted]. Consequently, the Supreme Court has warned that complete preemption should not be "lightly implied." *Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731, 752, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983) (Brennan, J., concurring); *see also Schmeling,* 97 F.3d at 1340 (noting that the Supreme Court has extended this doctrine "reluctantly.")

*Id.* at 1204-05. The court went on:

[A] claim of complete preemption demands a two-part analysis: first, we ask whether the federal regulation at issue preempts the state law relied on by the plaintiff; and second, "whether Congress intended to allow removal in such [a] case[ ], as manifested by the provision of a federal cause of action to enforce the [federal] regulation [ ]." *Schmeling,* 97 F.3d at 1342. We have cautioned, however, that courts should begin their inquiry with the second prong. *Id.* at 1343 (explaining that the interests of "comity and prudence" dictate that courts avoid addressing needlessly the first prong, which will frequently require a discussion of the merits of the preemption defense).

*Id.* at 1205-06 (footnotes omitted).

Here, "ordinary" preemption may apply to some or all of Plaintiff's claims. Nevertheless, the Court concludes that the rare doctrine of complete preemption does not apply. This case is similar to *Repository Technologies*: assuming Plaintiff's allegations are true, no Code section would provide relief for the wrongs allegedly suffered. Thus, the second prong of *Devon's* two-pronged test is not satisfied.

The Court does not have "arising under" jurisdiction.

4. "Arising in" jurisdiction.

Proceedings "arising in" in [sic] a bankruptcy case are those that could not exist outside of a bankruptcy case, but that are not causes of action created by the Bankruptcy Code. *A.H. Robins,* 86 F.3d at 371; *Eastport,* 935 F.2d at 1076; *Wood,* 825 F.2d at 97. For example, orders respecting the obtaining of credit, confirmation of a plan, the assumption or rejection of a contract are all matters which could not exist absent the filing of a bankruptcy case, but are not causes of action created by the Bankruptcy Code. *Wood,* 825 F.2d at 97; *see* 1 Lawrence P. King, *Collier on Bankruptcy* ¶ 3.01(c)[v] (15th ed. 1996)

*Midgard*, 204 B.R. at 771. "A matter 'arises in' bankruptcy if the claim can only be brought in a bankruptcy case because it has no existence outside bankruptcy." *In re McClelland*, 460 B.R. 397, 401 (Bankr. S.D.N.Y. 2011) (citing *In re Casual Male Corp.*, 317 B.R. 472, 476 (Bankr. S.D.N.Y. 2004)). As stated in *Casual Male*:

Case law in this district states that a claim "arises in" bankruptcy if, by its very nature, the claim can only be brought in a bankruptcy case because it has no existence outside of bankruptcy. Other decisions have described the test more

broadly—that a proceeding "arises in" bankruptcy when it is not based on any right expressly created by title 11, but "would have no practical existence but for the bankruptcy." Claims against the estate are in this category, even pre-petition ones based on state law. Many "arising under" matters litigated in bankruptcy cases also fall in the "arising in" category, and vice-versa.

317 B.R. at 476 (footnotes omitted); *see also Empery Tax Efficient, LP v. MusclePharm Corp.*, 2023 WL 2580006, at *5 (S.D.N.Y.) (citing *Casual Male* and *Bergstrom v. Dalkon Shield Claimants Trust*, 86 F.3d 364, 372 (4th Cir. 1996)).

If the claims are brought under state law, the "determinative issue is whether claims that appear to be based in state law are really an extension of the proceedings already before the bankruptcy court." *Baker v. Simpson*, 613 F.3d 346, 350 (2d Cir. 2020); *see also In re Southmark Corp.*, 163 F.3d 925, 928-29 (5th Cir. 1999) (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70-72 (1982).

"[T]he touchstone of the inquiry is whether the dispute is 'intimately related to the administration of the bankruptcy.'" *In re Tronox*, 603 B.R. 712, 720 (Bankr. S.D.N.Y. 2019) (quoting *Winstar Holdings, LLC v. Blackstone Grp. LP*, 2007 WL 4323003, at *5 (S.D.N.Y.)).

In *In re HRNC Dissolution Co.*, 2015 WL 5299468, at *6 (Bankr. E.D. Ky.), *aff'd*, 585 B.R. 837 (6th Cir. BAP 2018), *aff'd*, 761 F. App'x 553 (6th Cir. 2019), the bankruptcy court dealt with a declaratory judgment action initiated by a plaintiff who claimed ownership of assets sold at a bankruptcy auction. The claim was asserted several years after the auction, to recover the assets from the winning bidders. The bankruptcy court ruled that it had "arising in" jurisdiction over the claim because plaintiff's claims centered on alleged bad acts in an adversary proceeding related to the main bankruptcy case. *Id.* at *6. Furthermore, the injury plaintiff complained of was the judgment entered in the adversary proceeding, *Id.*, and all of the plaintiff's state-law theories faulted defendants for bad acts in the proceeding. *Id.*

-18-

Another relevant case is *Lothian Cassidy LLC v. Ransom*, 428 B.R. 555 (E.D.N.Y. 2010), where plaintiffs, a multi-state collection of individuals, trusts, pension plans, and other entities who allegedly lost their investments in Lothian Oil Inc. ("LOI"),"[11] brought state law claims[12] against a number of LOI board members, officers, and representatives. *Id.* at 557. The action was filed in New York state court. One of the defendants removed the case to the district court for the Eastern District of New York and moved to transfer venue to the Western District of Texas. Plaintiffs responded with a motion to remand or abstain, arguing that the district court lacked subject matter jurisdiction. The district court held that it had "related to" jurisdiction because of potential indemnification claims against LOI. *Id.* at 559. More to the point, the court held that it also had "arising in" jurisdiction:

> [T]he Court finds that plaintiffs' tort claims concerning alleged professional malpractice in the actual administration in bankruptcy court of the LOI bankruptcy estate create federal "arises in" jurisdiction. *See, e.g., Baker v. Simpson,* 413 B.R. 38, 43–44 (E.D.N.Y. 2009); *Winstar,* 2007 WL 4323003, at *4, 2007 U.S. Dist. LEXIS 90482, at *13–*14 (citing *In re Southmark Corp.,* 163 F.3d 925, 931 (5th Cir. 1999)). Additionally, matters involving the enforcement or construction of a bankruptcy court order fall under "arise in" jurisdiction. *Winstar,* 2007 WL 4323003, at *3–4, 2007 U.S. Dist. LEXIS 90482, at *11 (citing *In re Sterling Optical Corp.,* 302 B.R. 792, 801 (Bankr. S.D.N.Y. 2003)). Litigation of some, if not all, of plaintiffs' claims will require gateway interpretation of the bankruptcy court's prior orders, for example, the much-disputed plan injunction clause, (*see* Doc. # 28–1 at 47 § 11.3; *id.* at 15 ¶ O), before their action may proceed. *See, e.g., In re Petrie Retail, Inc.,* 304 F.3d 223, 230 (2d Cir. 2002) (finding subject-matter jurisdiction because, *inter alia,* "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders").

> Given that the case brought by plaintiffs is "intimately related to the administration of the bankruptcy" and "[t]he Bankruptcy Court has a vital interest in policing the integrity of the bankruptcy process in general," *Winstar,* 2007 WL 4323003 at *5,

---

[11] LOI had filed a chapter 11 case in the Western District of Texas and gotten a plan of liquidation confirmed two years before.

[12] "The causes of action were: breach of contract; breach of fiduciary duty; negligence; gross negligence; fraud; conversion; equitable estoppel; promissory estoppel; unjust enrichment; conspiracy; quantum meruit; tortious interference with contract; specific performance; actual trust; and constructive trust." *Id.* at 557, n. 3.

> 2007 U.S. Dist. LEXIS 90482, at *14, this Court has jurisdiction over it and is not obligated to remand it to state court.

*Id.* at 560.

For other relevant "arising in" decisions, *see In re Christ Hosp.*, 2014 WL 4613316, at *6-7 (D.N.J.) (finding "arising in" jurisdiction when plaintiff sought to attack a sale authorized by bankruptcy court order); *In re General Growth Properties, Inc.*, 460 B.R. 592, 599 (Bankr. S.D.N.Y. 2011) ("Because interpretation, construction and enforcement of the Plan and confirmation order is implicated by the State Court Action, the State Court Action is a core proceeding 'arising in' this bankruptcy case."); *In re Aramid Entertainment Fund, LLC*, 628 B.R. 584, 595 (Bankr. S.D.N.Y. 2021) (despite plaintiff's argument that he pleaded his state court action to deal only with prepetition acts, the claims were invariably intertwined with actions taken in the bankruptcy case, so the bankruptcy court had "arising in" jurisdiction); and *In re Ladder 3 Corp.*, 581 B.R. 7, 13–14 (Bankr. E.D.N.Y. 2018) (enforcement and interpretation of orders issued in core proceedings are also core proceedings).

Plaintiff's claims against Defendants are intimately related to the administration of the Bankruptcy Cases. The claims challenge the outcome of the Bankruptcy Cases, alleging that the terms of the Plan were the result of a civil conspiracy to breach fiduciary duties owed to Holding and Debtors. Had Judge Walrath sustained HRV's objection to the Plan, Plaintiff would not have filed the state court action. It was the adverse ruling in the Bankruptcy Cases that prompted Plaintiff to sue Defendants in state court.

Furthermore, Plaintiff's claims seek to modify the confirmed Plan. The Bankruptcy Cases reorganized only two claims or interests: Juniper Bishops' loan and Holding's indirect equity interest. HRV now seeks to overturn the reorganization by forcing Juniper Bishops pay money damages and transfer all payments received from Holding, Mezz, or Resort, including Mezz's

membership interest in Resort. The removed proceeding thus seeks to rewrite the confirmed Plan on terms much more favorable to Holding and much less favorable to Juniper Bishops. The result would be a completely new plan of reorganization.

Third, Plaintiff alleges a conspiracy among the principal participants in the Bankruptcy Cases, including Debtors' management. The bankruptcy court "has a vital interest in policing the integrity of the bankruptcy process in general." *Lothian*, 428 B.R. at 560. The court has "arising in" jurisdiction because Plaintiff alleges bad acts in the Bankruptcy Cases. *HRNC*, 2015 WL 5299468, at *6.

Fourth, the removed proceeding is an extension of the Bankruptcy Cases, dealing with the same issues addressed by Judge Walrath: the change in management; whether Mr. Blank's proposal was better than Juniper Bishop's; management's good faith, etc. As such, the bankruptcy court has "arising in" jurisdiction. *See Baker v. Simpson*, 613 F.3d at 350; and *Southmark*, 163 F.3d at 928-29

Finally, the complaint requires that the confirmation order be interpreted. Plaintiff's claims in this proceeding are premised on the "bad deal" Mezz got in the Bankruptcy Cases and the consequent loss of Mezz's alleged equity in the Resort. Mezz, however, released any claims it might have had. Can Plaintiff avoid the release by couching its claims as owned by Holding, rather than Mezz?[13] Answering that question will require careful interpretation of the confirmation order, giving the bankruptcy court "arising in" jurisdiction over the proceeding. *See Aramid*, 628 B.R. at 595, ("the term arising in 'plainly covers' matters that require the interpretation or enforcement of

---

[13] *See, e.g., Marchman Enterprises, Inc. v. NCNB Texas National Bank*, 120 N.M. 74, 81 (S. Ct. 1995) (shareholder lacks standing to bring an action for damages allegedly caused by wrongful conduct harming the corporation).

orders issued during a bankruptcy case.... *In re Tronox*, 603 B.R. at 719 (citing *Mt. McKinley Ins.*

*Co*, 399 F.3d at 447–48)").

The Court finds and concludes that it has "arising in" jurisdiction.

5.    "Related to" jurisdiction.

Related proceedings are civil proceedings that, in the absence of a bankruptcy
petition, could have been brought in a district court or state court. *In re Colorado
Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir. 1984). "[T]he test for
determining whether a civil proceeding is related in bankruptcy is whether the
outcome of that proceeding could conceivably have any effect on the estate being
administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.
1984) (emphasis omitted). . . .

*Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990); *see also In re Otero*

*County Hospital*, 617 B.R. 699, 704 (Bankr. D.N.M. 2020) (quoting *Gardner*). "Related to"

jurisdiction is broader in chapter 11 cases than chapter 7 cases. *Celotex Corp. v. Edwards*, 514

U.S. 300, 310 (1995).

It is not possible to apply *Pacor's* "conceivable effect" test post-confirmation because the

estate no longer exists. *See, e.g., In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004); and *In*

*re Angel Fire Corp.*, 2013 WL 1856350, at *10 (D.N.M.) (citing *Resorts Int'l*). Nevertheless,

"related to" jurisdiction exists post-confirmation, although it "narrows to some extent." *Id.*

(quoting *In re Houlik*, 481 B.R. 661, 675 (10th Cir. BAP 2012)).

The Tenth Circuit has not adopted a test for determining a bankruptcy court's post-

confirmation "related to" jurisdiction. The Third Circuit adopted a "close nexus" test: "At the post-

confirmation stage, the claim must affect an integral aspect of the bankruptcy process – there must

be a close nexus to the bankruptcy plan or proceeding." *Resorts Int'l*, 372 F.3d at 167. The "close

nexus" test has been adopted by the Ninth Circuit, *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194

(9th Cir. 2005), and the Fourth Circuit, *Valley Historic Ltd. Partnership v. Bank of New York*, 486

-22-

F.3d 831, 837 (4th Cir. 2007). *See also In re DPH Holdings Corp.*, 448 Fed. Appx. 134, at *2 (2d Cir. 2011) (unpublished).

The "close nexus" test is alternatively stated as:

> a bankruptcy court may only exercise post-confirmation "related to" jurisdiction over a proceeding if there is a close nexus connecting that proceeding with some demonstrable effect on the debtor or the plan of reorganization in the lead bankruptcy.

*Angel Fire*, 2013 WL 1856350, at *14, citing *In re Wilshire Courtyard*, 459 B.R. 416, 428 (9th Cir. BAP 2011).

This Court has used the "close nexus" test for determining post-confirmation "related to" jurisdiction. *See In re Sunnyland Farms, Inc.*, 2019 WL 507536 (Bankr. D.N.M.); and *In re Hart Oil & Gas, Inc.*, 534 B.R. 35, 45 (Bankr. D.N.M. 2015). In addition, the *Angel Fire* court concluded that "the Tenth Circuit and its B.A.P. have effectively applied the close-nexus test to the few post-confirmation disputes that have comes to their attention." *Angel Fire*, 2013 WL 1856350, at 12 (citing cases).

The Fifth Circuit has a narrower test; it considers three factors to determine post confirmation "related to" jurisdiction: "(1) whether the claims deal principally with pre-confirmation relations between the parties, (2) whether any antagonism existed between the parties at the date of reorganization, and 3) whether facts or law deriving from the reorganization or the plan are necessary to the claim." *In re Enron Corp.*, 535 F.3d 325, 335 (5th Cir. 2008).

The Court prefers the "close nexus" test and predicts the Tenth circuit will adopt it. Regardless, under it or the *Enron* test, the Court has "related to" jurisdiction over the removed state court action. Applying *Angel Fire/Wilshire Courtyard's* version of the "close nexus" test, Plaintiff's claims would have a dramatic effect on the confirmed Plan. A favorable jury verdict

would, at a minimum, significantly alter the payments to Juniper Bishops and Holding. If disgorgement were ordered, the Plan would be canceled for all intents and purposes.

Even under the narrower *Enron* test, the Court has "related to" jurisdiction: Plaintiff's claims deal with pre-confirmation issues; there was significant antagonism between the parties at the time of Plan confirmation; and the facts of the reorganization and the plan are at the center of the claims.

The Court finds and concludes that it has "related to" jurisdiction.

Plaintiff's second argument, i.e., to remand for lack of subject matter jurisdiction, must be overruled.

D.    Plaintiff's Third Argument: The Court Must Abstain.

Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Courts have interpreted this "mandatory abstention" section as containing the following requirements: 1) The motion for abstention must be timely filed; 2) The matter must be based on a state law claim or cause of action; 3) The action must have been commenced in state court; 4) The action must be able to be timely adjudicated in state court; 5) The claim must be within the Court's non-core jurisdiction; and 6) There must be no independent source of federal jurisdiction that would have permitted the plaintiff to commence the action in federal court in the absence of the bankruptcy case. *See, e.g., Hernandez v. Lasalle Bank, N.A. (In re Hernandez)*, 2010 WL 5155011, at *4 (Bankr. D.N.M.) (citing *In re Mobile Tool Intern.,* 320 B.R. 552, 556 (Bankr. D. Del. 2005), and *In re Gregory Rock House Ranch, LLC,* 339 B.R. 249, 253 (Bankr. D.N.M. 2006)).

"A party must meet all the requirements of mandatory abstention for relief to be granted." *Mobile Tool*, 320 B.R. at 556 (citing *Bohm v. Horsley Co. (In re Groggel),* 305 B.R. 234, 238 (Bankr. W.D. Pa. 2004)).

In the removed proceeding, four of the six requirements are met (Nos. 1, 2, 3, and 6) but two are not: requirement No. 4 (timely adjudication) and requirement No. 5 (the claims are within the court's non-core jurisdiction).

Requirement No. 4. Timely Adjudication. Abstention is not mandatory unless, inter alia, the proceeding can be timely adjudicated in state court. Here, the state court lacks subject matter jurisdiction to decide whether there was anything improper about the proceedings in the Bankruptcy Cases. In particular, was Holding's claim improperly classified? Should the membership interest of Resort Owner have been transferred to Juniper Bishops? Should Judge Walrath have confirmed the Plan? Were the Bankruptcy Cases tainted by improper dealings and breaches of duty? Did plan confirmation damage Plaintiff in a way that is compensable in state court? Bankruptcy courts have exclusive jurisdiction over all cases under title 11, § 1334(a), and all estate property, § 1334(e)(1). The state court lacks jurisdiction to rule on the heart of Plaintiff's case: the propriety of confirming the Plan and transferring Resort Owner to Juniper Bishops. No state court wants to, or can, rule on whether Judge Walrath properly applied 11 U.S.C. § 1129, or whether entry of the confirmation order otherwise violated Holding's rights. Lacking the jurisdiction to modify or set aside the confirmation order, the state court could not timely adjudicate the proceeding.

Requirement No. 6. Non-Core Jurisdiction. Mandatory abstention does not apply to "core proceedings." *See, e.g., Aramid*, 628 B.R. at 594, citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002). Core proceedings are proceedings that involve rights created by bankruptcy law or

which only arise in a bankruptcy proceeding. *Gardner*, 913 F.2d at 1518; *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 397–98 (10th Cir. BAP 2007) (citing *Gardner*). In other words, core proceeding are proceedings within the Court's "arising under" or "arising in" jurisdiction. *Telluride Income*, 364 B.R. at 397, citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3rd Cir. 2004). The Court has "arising in" jurisdiction over Plaintiff's claims, so its jurisdiction is "core."

As not all the requirements of § 1334(c)(2) are met, Plaintiff's third argument (mandatory abstention) must be overruled.

E.     Plaintiff's Fourth Argument: The Court Should Permissively Abstain or Equitably Remand.

Finally, Plaintiff argues that even if the Court has subject matter jurisdiction and is not required to abstain, the Court should send the proceeding back to state court under the permissive abstention and/or equitable remand provisions of Title 28. The permissive abstention statute is § 1334(c)(1):

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State court or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11,

while § 1452(b) is the equitable remand statute:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

The doctrines largely overlap:

> "[T]he factors governing permissive abstention and equitable remand are nearly identical." "Because the analysis is so similar, courts that grant remand often employ equitable remand in 28 U.S.C. § 1452(b), which allows a court to remand "on any equitable ground" claims removed under § 1452(a)." Therefore, the Court need not undertake separate analyses to determine whether permissive abstention or equitable remand is appropriate; the doctrines are properly addressed with one analysis.

*Doe v. Roman Catholic Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 716 (E.D. La. 2022) (footnotes omitted); *see also In re Pacheco*, 606 B.R. 126, 131 (Bankr. D.N.M. 2020) ("the considerations for equitable remand and permissive abstention are virtually identical").

In deciding whether permissive abstention/equitable remand is appropriate, courts consider the following factors:

> 1. the effect of remand on the efficient administration of the estate;
> 2. the extent to which state law issues predominate over bankruptcy issues;
> 3. the difficult or unsettled nature of the applicable law;
> 4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;
> 5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> 6. the degree of relatedness of the proceeding to the bankruptcy case;
> 7. the substance rather than the form of an asserted "core" proceeding;
> 8. the feasibility of severing state law claims from core bankruptcy matters;
> 9. the burden on the bankruptcy court's docket;
> 10. the likelihood that the proceeding involves forum shopping;
> 11. the existence of a right to jury trial; and
> 12. the presence of non-debtor parties.

*Rodriguez v. Brutsche (In re Brutsche)*, 2012 WL 4903663, at *3 (Bankr. D.N.M.); *see also In re Fred Dale Van Winkle,* 2016 WL 196981, *5 (Bankr. D.N.M.) (citing *In re Commercial Financial Services, Inc.,* 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000), *reconsideration granted in part,* 225 B.R. 68 (Bankr. N.D. Okla. 2000), and *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 428-429 (Bankr. S.D. Tex. 1987)).

In addition to the discretionary abstention factors, courts consider the following in determining whether equitable remand is appropriate under § 1452(b):

> 1. whether remand serves principles of judicial economy;
> 2. whether there is prejudice to parties not removed;
> 3. whether the remand lessens the possibilities of inconsistent results; and
> 4. whether the court where the action originated has greater expertise.

*Brutsche*, 2012 WL 4903663, at *3. The Court weighs the 16 factors:

| Factor | Discussion |
|---|---|
| 1. Effect on efficient administration. | It would be more efficient for the bankruptcy court to hear the derivative action, as it is so intimately connected to the Bankruptcy Cases, involves bankruptcy caw, the law of the case, and other federal law. In addition, while bankruptcy courts are used to applying state law, state courts are not used to ruling on bankruptcy law. |
| 2. Extent to which state law issues predominate. | Although the causes of action are couched in state law, bankruptcy law underlies and is intertwined with the claims. |
| 3. Difficulty or unsettled nature of applicable state law. | The state law that applies to the causes of action likely is settled, although there may be a question of which state law (New Mexico or Delaware) applies. |
| 4. Presence of a related state court proceeding. | There is no related state court proceeding. |
| 5. Federal jurisdictional basis of the proceeding. | The district court has arising in and related to jurisdiction. |
| 6. Degree of relatedness of the proceeding to the main bankruptcy case. | The proceeding is closely related to the Bankruptcy Cases. |
| 7. Substance of the asserted "core" proceeding. | The substance of the claims is that Defendants breached alleged fiduciary duties to Holding by, inter alia, pursuing the Bankruptcy Cases and seeking confirmation of the Plan. |
| 8. Feasibility of severing the state law claims. | As the state law claims are inextricably intertwined with the underlying bankruptcy law issues, no severance is possible. |
| 9. Burden on the bankruptcy court's docket. | The docket of the Delaware bankruptcy court, like the docket of the state court, likely is very busy. The docket of this Court, although getting busier, probably is less busy. |
| 10. Likelihood of forum shopping. | There likely was forum shopping when Plaintiff filed the action in Santa Fe County, New Mexico (Plaintiff and most defendants are Delaware entities). Clearly, Defendants prefer to be in federal court. |
| 11. Right to a jury trial. | Plaintiff may have a right to a jury trial, unless the loan documents it signed with Juniper Bishops waived it. |
| 12. Presence of nondebtor parties. | There are a number of nondebtor parties. However, all parties were closely connected to the Bankruptcy Cases. |
| 13. Whether remand serves principles of judicial economy. | Judicial economy would be better served by denying the motion to remand/abstain. |
| 14. Whether there is prejudice to parties not removed. | The removal was done for all claims. There are no parties involved in claims that were not removed. |
| 15. Whether the remand lessens the possibilities of inconsistent results. | Remand would increase, not decrease, the risk of inconsistent results. |
| 16. Whether the court where the action originated has greater expertise. | Adjudication of the proceeding will involve interpretation of the Plan, the confirmation order, the equity participation agreement, and other bankruptcy documents, orders, and |

| | agreements, as well as the application of bankruptcy law. The state court lacks expertise on the issues. |
|---|---|

The factors weigh against abstaining or remanding the proceeding under the permissive abstention/equitable remand statutes. Plaintiff's fourth argument must be overruled.

<u>Conclusion</u>

Plaintiff's complaint is within the Court's "arising in" and "related to" jurisdiction: it attacks the confirmed Plan, questions the bankruptcy court's judgment in confirming the plan, alleges egregious breaches of fiduciary duty by Debtor's management during the Bankruptcy Cases, requires construction and interpretation of the confirmation order and the Plan, and asks the state court to undo or modify the Plan. Plaintiff couches its claims in state law but the overarching bankruptcy law issues are plain.

Because the Court has "arising in" and "related to" jurisdiction over the claims in this proceeding, removal of the proceeding was proper. Mandatory abstention does not apply because the claims are core and the state court lacks the subject matter jurisdiction needed to adjudicate the dispute timely. Permissive abstention/equitable remand is not indicated. By a separate order, the motion to remand and/or abstain will be denied.

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 4, 2024
Copies to: counsel of record