UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

HRV SANTA FE, LLC,

    Plaintiff,

v.                                                                                    Adv. Proc. 24-01002-t

JAY WOLF; JUNIPER INVESTMENT
ADVISORS, LLC; JUNIPER REAL
ESTATE, LLC; JUNIPER CAPITAL
PARTNERS, LLC; JUNIPER BISHOPS
MANAGER, LLC; JUNIPER BISHOPS,
LLC; JUNIPER BL HOLDCO, LLC; and
JUNIPER BL PROPCO, LLC;

    Defendants,

BL SANTA FE (HOLDING), LLC,

    Nominal Defendant.

## **OPINION**

        The Court recently denied Plaintiff's motion to remand this proceeding to state court or abstain from hearing it. Plaintiff has moved the district court to allow an interlocutory appeal of the order denying remand. Now before the Court is Plaintiff's assertion that the Court lost jurisdiction over the proceeding when Plaintiff filed its motion for leave to appeal the remand denial order. In support of its position, Plaintiff relies on the "collateral order doctrine." Defendants disagree that the doctrine applies and argue that the Court retains jurisdiction over the proceeding. The Court rules that, unless and until the district court grants Plaintiff's motion for leave to file an interlocutory appeal, the Court retains jurisdiction over the proceeding. In a related matter, the Court will deny Plaintiff's alleged informal motion for a stay pending appeal.

A.  Facts.

For the limited purpose of ruling on these matters, the Court finds:[1]

This dispute involves the renovation of the Bishops Lodge resort and hotel in Santa Fe, New Mexico (the "Resort"). Before 2021, the Resort is owned and operated by BL Santa Fe, LLC ("Resort Owner"), which was wholly owned by BL Santa Fe (Mezz), LLC ("Mezz"), which is wholly owned by BL Santa Fe (Holding), LLC ("Holding"). Plaintiff HRV Santa Fe, LLC ("HRV") is a minority owner of Holding and, from 2017 to December 16, 2020, was the manager of Holding, Mezz, and Resort Owner.

On or about June 14, 2019, Defendant Juniper Bishops, LLC ("Juniper Bishops") made a $15,000,000 "mezzanine" loan to Mezz to supplement a senior loan obtained by Resort Owner from another lender. The Mezzanine Loan was secured by Mezz's 100% membership interest in Resort Owner. Together, the loans were to fund the renovation of the Resort.

The renovation fell behind schedule and was over budget. In December 2020, the majority members of Holding voted to remove HRV and its owner, Richard Holland, from their positions as officers and managers of Holding, Mezz, and Resort Owner, and to appoint a board of managers comprised of Brad Brooks, Michael Norvet, DeSantis, and Alex Walter (the "Board of Managers").

Mr. Holland and HRV disputed their removal from management. They contended that the removal was contrary to the governing corporate documents and therefore was void. Mr. Holland refused to acknowledge the Board of Managers and continued to hold himself out to third parties as the manager and controlling officer of Holding, Mezz, and Resort Owner.

---

[1] The Court takes judicial notice of its docket in this case. *See, e.g., Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (same).

In January 2021, Holland, Juniper Bishops, and the Board of Managers understood that additional capital would be required to complete the renovation project. Holding's members were unwilling or unable to contribute additional equity, so they looked for a replacement lender. One prospective lender/investor was Andrew Blank, who stated that he was interested in infusing equity into the Resort and paying off Juniper Bishops. Another prospective lender/investor was Juniper Bishops itself, which offered term sheets to refinance the renovation in February and April of 2021.

The majority members of Holding signed a terms sheet submitted by Juniper Bishops in April. Mr. Holland and HRV did not. Instead, Mr. Holland signed a term sheet with Mr. Blank (the "Blank Term Sheet"). The Board of Managers did not sign the Blank Term Sheet.

When Juniper Bishops learned of the Blank Term Sheet it withdrew its term sheet and declared the mezzanine loan in default. On April 19, 2021, Juniper Bishops gave notice that it would conduct a public sale of its collateral, the membership interest of Resort Owner. Mezz responded that it would file bankruptcy to prevent the sale.

Ultimately, Juniper Bishops, the Board of Managers, and others signed a restructuring support agreement (the "RSA") that outlined the terms of a proposed restructuring. On August 30, 2021, in furtherance of the RSA, Resort Owner and Mezz filed voluntary chapter 11 cases in the United States Bankruptcy Court for the District of Delaware, commencing jointly administered chapter 11 cases (the "Bankruptcy Case").

On the petition date, the debtors filed a motion for approval of debtor-in-possession financing, wherein Juniper Bishops would provide Mezz with post-petition financing of about $5,800,000 to fund the Debtors' operations during the Bankruptcy Cases. The Delaware bankruptcy court overruled HRV's objection and approved the debtor's post-petition financing with Juniper Bishops.

Also on the petition date, the debtors filed a joint plan of reorganization and a joint disclosure statement. On October 14, 2021, the debtors filed an amended plan of reorganization (the "Plan"). The Plan generally provided for Mezz to convey 100% of the membership interest in Resort Owner to Juniper BL HoldCo, LLC ("JBL HoldCo"), a subsidiary of Juniper Bishops. In return, the Mezzanine Loan would be deemed paid in full; JBL HoldCo would finance the completion of the Resort renovations and its operations; the senior loan would be restructured; and Mezz, Juniper Bishops, and JBL HoldCo would sign an equity participation agreement, under which Mezz would be entitled to receive certain potential "back-end distributions."

HRV objected to the Plan. At the confirmation hearing, HRV argued that in signing the RSA, the Debtors were in dereliction of their duties to the estate; that the Blank plan was "objectively better"; and that a reasonable fiduciary would have better leveraged Blank's proposal to improve the terms of the Mezzanine Loan or explained its reasoning with regard to the Blank proposal. HRV actively participated in the hearing.

At the conclusion of the confirmation hearing, the Delaware bankruptcy court ruled that "the Debtors' conclusion to proceed with the Plan, which is based on the RSA, meets its fiduciary duty because it is the highest and best path forward for the Debtor to restructure the Debtors' principal asset, the Resort." The court found that the Blank alternative proposal was inferior to the transaction proposed through the Plan and overruled HRV's objection. The Plan was confirmed on October 21, 2021, pursuant a written confirmation order that incorporated the court's oral findings of fact and conclusions of law from the hearing.

The Plan became effective on October 29, 2021, and has been substantially consummated. The Bankruptcy Cases are still open in Delaware.

Plaintiff filed this derivative action on December 15, 2023, in the First Judicial District Court, State of New Mexico. In its complaint Plaintiff asserted that Juniper Bishops breached fiduciary duties to Holding (Count I); aided and abetted the Majority Members' breaches of fiduciary duty to Holding (Count II); and that all Defendants entered into a civil conspiracy to marginalize, circumvent, and damage Plaintiff by favoring the Juniper Bishops' restructuring proposal rather than Mr. Blank's (Count III). Plaintiff later added two similar counts against Messrs. Walter, Brooks, and Norvet. Plaintiff alleged that it was damaged because Mezz lost all the equity value in Resort Owner and asked for compensatory damages, punitive damages, and disgorgement.

Defendants removed the state court action to this Court on January 12, 2024, followed by a motion for change of venue to the Delaware bankruptcy court. Plaintiff responded with a motion to remand the proceeding to state court or, alternatively, for the Court to abstain from hearing the proceeding. After full briefing and argument, this Court denied the remand/abstention motion.

Plaintiff filed a notice of appeal of the order denying remand, along with a motion for leave to appeal the order.

On July 11, 2024, the Court held a status conference on the motion for change of venue. At the conference Plaintiff argued that the Court lacked jurisdiction to decide the venue motion until the district court had ruled on the interlocutory appeal. In support of its position, Plaintiff relied on the "collateral order doctrine." Defendants dispute that the collateral order doctrine applies and argue that the Court retains jurisdiction over the proceeding. The issue has been fully briefed.

Plaintiff did not file a written motion for stay pending appeal in this Court or the district court. However, Plaintiff asserts it made an oral motion for a stay at the status conference.

B. <u>Plaintiff's "Collateral Order Doctrine" Argument</u>.

Plaintiff argues that the Court lacks jurisdiction over this proceeding because the appeal comes within the "collateral order doctrine."

In general, only final judgments and orders can be appealed. *See, e.g.*, *Coomer v. Make Your Life Epic, LLC*, 671 F. Supp. 3d 1222, 1228 (D. Colo. 2023) (with certain exceptions, "courts of appeals have no jurisdiction to review orders of the district court until there is a 'final decision' from the district court under 28 U.S.C. § 1291.").

When a final judgment or order of a bankruptcy court is appealed to the district court, the bankruptcy court loses jurisdiction over the matter:

> Our analysis . . . begins with the axiomatic premise that "a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam). *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 379, 105 S. Ct. 1327, 1331, 84 L. Ed. 2d 274 (1985).

*Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990), overruled on other grounds by *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998).

As discussed in more detail below, the jurisdictional analysis for interlocutory appeals is different. "[W]hen an interlocutory appeal is taken, the district court retains jurisdiction to proceed with matters not involved in that appeal." *Garcia v. Burlington Northern. Ry. Co.,* 818 F.2d 713, 721 (10th Cir. 1987); *see also Stewart v. Donges*, 915 F.2d at 576 (quoting *Garcia*); *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1086 (D.N.M.) (quoting *Garcia*); *Braverman v. New Mexico*, 2012 WL 5378290, at *14 (D.N.M.) (same); *Landry v. U.S.*, 20 F.3d 469, at *7 (5th Cir.) (unpublished) (same).

However, if an interlocutory appeal comes within the "collateral order doctrine," it is treated like an appeal of a final order, in that jurisdiction over the entire proceeding shifts to the appeals court. *Stewart v. Donges*, 915 F.2d at 576. Plaintiff argues that its appeal of the Court's order denying remand comes within the doctrine, so the Court has no jurisdiction to take any further action until the appeal has been resolved.[2]

1. The collateral order doctrine.

> The general rule is that "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equipment Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 868 . . . (citations omitted). Accordingly, we have held that a decision is ordinarily considered final and appealable under § 1291 only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233 . . . (1945); see also *Digital*, supra, at 867 . . . (quoting this standard). **We have also recognized, however, a narrow class of collateral orders which do not meet this definition of finality, but which are nevertheless immediately appealable under § 1291 because they "'conclusively determine [a] disputed question'" that is "'completely separate from the merits of the action,'" "'effectively unreviewable on appeal from a final judgment,'"** *Richardson–Merrell Inc. v. Koller,* 472 U.S. 424, 431 . . . (1985) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 . . . (1978)), and "too important to be denied review," *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546 . . . (1949).

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712 (1996) (emphasis added); *see also Stewart v. Donges*, 915 F.2d at 574 ("[t]he Supreme Court has held that there is a small class of decisions 'which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'"); and *Coomer*, 671 F. Supp. 3d at 1228 ("[a] party asserting jurisdiction under the collateral order doctrine must show

---

[2] Surprisingly, Plaintiff did not make this argument to the district court. Instead, Plaintiff asked the district court for leave to appeal under 28 U.S.C. § 158(a)(3)[2] (discussed below). Leave to appeal is not needed if the collateral order doctrine applies. It is not clear why Plaintiff has taken inconsistent positions before the Court and the district court.

that the district court's order: (1) 'conclusively determine[d] the disputed question,' (2) 'resolve[d] an important issue completely separate from the merits of the action,' and (3) is 'effectively unreviewable on appeal from a final judgment.'").

The collateral order doctrine has been applied in bankruptcy cases. *See, e.g., In re Sorrells*, 218 B.R. 580, 582 (10th Cir. BAP 1998) (stating that an order may be considered "final" under § 158(a) if it comes within the collateral order doctrine); *In re Midgard Corp.*, 204 B.R. 764, 768 (10th Cir. BAP 1997) (same); and *In re Jackson Brook Institute, Inc.*, 227 B.R. 569, 576 (D. Me. 1998) (same).

Very few kinds of orders come within the collateral order doctrine:

> The types of orders that fall under the collateral order doctrine "require only two hands to count." *Belya v. Kapral*, 45 F.4th 621, 629 n.5 (2d Cir. 2022), *cert. denied sub nom. Synod of Bishops of the Russian Orthodox Church Outside of Russ. v. Belya*, ––– U.S. ––––, 143 S. Ct. 2609, 216 L.Ed.2d 1208 (2023). The first and larger category includes "constitutionally based immunities," *Los Lobos Renewable Power*, 885 F.3d at 664—orders denying qualified, absolute, tribal, Eleventh Amendment, or another immunity. The second category includes mostly orders that would be moot following final judgment. The Supreme Court has declined to extend collateral order treatment to a wide variety of other orders.

*Mohamed v. Jones*, 100 F.4th 1214, 1219 (10th Cir. 2024) (footnotes omitted).

2. <u>Appeals of orders denying remand motions are not within the collateral order doctrine</u>. There is abundant case law that, unlike orders *granting* motions to remand or abstain,[3] orders *denying* such motions do not come within the collateral order doctrine. *See, e.g., Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (an order denying a motion to remand, "standing alone," is "[o]bviously ... not final and [immediately] appealable" as of right"); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transport Co.*, 359 F.3d 1237, 1239 (10th Cir. 2004) (citing *Caterpillar*, the Tenth Circuit held that "[o]rdinarily, an interlocutory appeal may not be taken from the denial of

---

[3] *See, e.g., Quackenbush v. Allstate*, 517 U.S. at 712.

a motion to remand a previously removed case"); *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1275 (9th Cir. 1990) (orders denying remand do not belong to that rare breed of cases that come within the collateral order exception); *Jackson Brook*, 227 B.R. at 579 (same); *In re Rupp & Bowman Co.*, 109 F.3d 237, 240 (5th Cir. 1997) (same); *In re Morgantown Excavators, Inc.*, 507 B.R. 126, 131 (N.D. W. Va. 2014) (same); *Jallad v. Madera*, 2017 WL 11774394, at *1 (3d Cir. 2017) (same, citing *N.J. Dep't of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816, 822 (3d Cir. 2010)); and *Neal v. Brown*, 980 F.2d 747, 748 (D.C. Cir. 1992) (same, gathering cases and citing Wright & Miller).

One case from a court in the Tenth Circuit ruled the other way. In *Midgard*, the Tenth Circuit Bankruptcy Appellate Panel ruled that an order denying a motion to remand came within the collateral order doctrine. 204 B.R. at 769. In so holding, the court equated orders granting remand motions with orders denying such motions. *Id.* Two years later, however, *Midgard* was overruled *sub silentio* by *In re Denton*, 236 B.R. 418, 419 (10th Cir. BAP 1999), which held that an order denying a remand/abstention motion did not come within the collateral order doctrine. *Midgard* was overruled again, *sub silentio*, by *Magnolia Marine Transport,* 359 F.3d at 1239 ("[o]rdinarily, an interlocutory appeal may not be taken from the denial of a motion to remand a previously removed case"). The Court will not follow *Midgard* on this issue.

The difference between an order granting a remand/abstention motion and an order denying such a motion is clear. In the former, the federal proceeding is over. The action is back in the state court from whence it was removed. Appellate review of the remand order, if not done immediately, would be impossible. In contrast, an order denying a remand/abstention motion keeps the proceeding in federal court for trial or other final disposition. In such cases, the party seeking remand can appeal the order denying it after entry of a final judgment. *See, e.g., City of Warren v.*

*City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007) ("[b]ecause the district court dismissed the case, thereby rendering a final judgment, this court has jurisdiction to consider the denial of the motion to remand"); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) ("[a] district court's refusal to remand an action to the state court is ordinarily not a final order and cannot be reviewed unless the court enters a final judgment"); *see generally* 15A Wright & Miller, Federal Practice & Procedure § 3914.11, n.1 and accompanying text (3d ed.) ("One aspect of appealing orders as to removal and remand remains blessedly simple. An order denying remand is not final . . . . A denial of remand is reviewable on appeal from the final judgment, following the ordinary rule that interlocutory orders merge in the final judgment.").

Plaintiff's appeal of the Court's order denying the remand/abstention motion does not come within the collateral order doctrine. Plaintiff's jurisdictional argument, which is based solely on the doctrine, is overruled.

C. <u>Bankruptcy Court Jurisdiction and Interlocutory Appeals Under § 158(a)(3)</u>.

Although Plaintiff did not argue this point, the jurisdictional implications of Plaintiff's motion for leave to file an interlocutory appeal, now pending in the district court, should be considered. Section 158(a)(3) provides:

> The district courts of the United States shall have jurisdiction to hear appeals . . . with leave of court, from other interlocutory orders and decrees; …

If a motion for leave to pursue an interlocutory appeal is granted, the bankruptcy court loses jurisdiction over those aspects of the case involved in the appeal. *See, e.g., Dayton Independent School Dist. v. U.S. Mineral Products Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990) ("[w]hen one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case"). The district court retains, however, "jurisdiction to proceed with matters not involved in that appeal." *Taylor v. Sterrett,* 640 F.2d 663,

668 (5th Cir. 1981), citing 9 Moore's Federal Practice ¶ 203.11, at 3-54 (2d ed. 1980)); *see also Garcia v. Burlington Northern R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987) (citing and following *Sterrett*).

It is not always easy to determine which "aspects" of a case are "involved" in an interlocutory appeal. *See, e.g., Retractable Technologies v. Abbott Laboratories, Inc.*, 2010 WL 11531435, at *5 (E.D. Tex.) ("the threshold question, then, is which 'aspects' of the case are implicated by the interlocutory review"). With a motion to remand or abstain, it could be argued that *all* aspects of the proceeding are involved. The Court will address this question later, if needed.

Regardless, under § 158(a)(3) there is no shift in jurisdiction unless and until the district court grants the motion for leave to appeal. *See, e.g., In re Wade*, 500 B.R. 896, 902 (Bankr. W.D. Tenn. 2013) ("the district court has appellate jurisdiction over an appeal of an interlocutory order only after the district court grants leave to appeal. . . . Absent this granting of leave to appeal, the district court arguably does not have appellate jurisdiction over the interlocutory orders submitted for appeal"); *In re Huezo*, 2020 WL 4199950, at *6 (9th Cir. BAP) ("[t]his Panel lacks jurisdiction over interlocutory orders unless it grants leave to appeal."); *In re Barker*, 306 B.R. 339, 345 (Bankr. E.D. Cal. 2004) ("the court's order is interlocutory, which has the consequence that an appellate court does not acquire exclusive appellate jurisdiction unless and until it grants leave to appeal."); *In re Charmoli*, 651 B.R. 529, 532 (Bankr. E.D. Wis. 2023) (bankruptcy court allowed discovery in an adversary proceeding pending the district court's ruling on a § 158(a)(3) motion for leave to file an interlocutory appeal); *In re Belli*, 268 B.R. 851, 858 (9th Cir. BAP 2001) ("[w]e lack jurisdiction under 28 U.S.C. § 158(a)(1) and decline to take jurisdiction by way of leave to appeal under 28 U.S.C. § 158(a)(3)")); *Brady v. Otton*, 2015 WL 1906204, at *2 (N.D. Cal.) ("with limited exceptions not relevant here, district courts lack jurisdiction over appeals from the

interlocutory orders of bankruptcy judges except where the district court grants leave to appeal under 28 U.S.C § 158(a)(3)"); *In re Bank of New England Corp.*, 218 B.R. 643, 652 (1st Cir. BAP 1998) (jurisdiction to hear interlocutory appeals under § 158(a)(3) is "discretionary"); *In re Lehman Bros. Inc.*, 2015 WL 1212635, at *1 (S.D.N.Y.) (declining to "take" jurisdiction under § 158(a)(3) and dismissing the interlocutory appeal for lack of jurisdiction); *Hooker v. Wanigas Credit Union*, 2020 WL 7253496, at *1 (6th Cir.) (because the district court failed to grant consent to an interlocutory appeal of a bankruptcy court order under § 158(a)(3), its lacked jurisdiction to hear the appeal); *McCallan v. Hamm*, 502 B.R. 245, 249 (M.D. Ala. 2013) (denying motion for leave to appeal interlocutory bankruptcy court order and dismissing for lack of jurisdiction); *Babayoff v. Stevens*, 2024 WL 1798182, at *2 (E.D.N.Y.) (appeal of interlocutory bankruptcy court order dismissed for lack of jurisdiction because the district court denied appellant's motion for leave to appeal).

Here, the district court has not yet ruled on Plaintiff's motion for leave to pursue an interlocutory appeal. Unless and until the district court grants the motion, the Court retains jurisdiction over the proceeding.

D.  Plaintiff's Alleged Informal Motion for a Stay Pending Appeal Will Be Denied.

A party filing an interlocutory appeal may request that the Court stay the proceedings pending its resolution. Fed. R. Bankr. P. 8007. Plaintiff has not filed a motion for a stay pending appeal. Nevertheless, in its July 22, 2024, "letter brief," Plaintiff asserts that it has asked for one.[4]

> "The movant bears a 'heavy' burden" of showing that a stay is justified. *In re Efron*, 535 B.R. 516, 518 (Bankr. D.P.R. 2014), citing *In re GMC*, 409 B.R. 24 (Bankr. S.D.N.Y. 2009). . . Courts consider the following when determining whether to grant a motion for stay pending appeal: "[1] the likelihood of success on appeal; [2] the threat of irreparable harm if the stay is not granted; [3] the absence of harm to

---

[4] Plaintiff asserted: "In any event, a stay has now been requested and is clearly required under applicable law."

opposing parties if the stay is granted; and [4] any risk of harm to the public interest." *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (internal quotations omitted) . . . . The first two elements are the most critical. *Nken*, 556 U.S. at 434. . . . The requesting party must satisfy all four elements to obtain a stay pending appeal. *Sunland, Inc.*, 507 B.R. at 765 . . . .

*In re Roman Catholic Church of Archdiocese of Santa Fe*, 2021 WL 408971, at *2 (Bankr. D.N.M.); *see also Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1060 (D.N.M. 2017) (listing the same elements).

    1.    <u>Likelihood of success on the merits</u>. For interlocutory appeals, the "likelihood of success" element means that there is a likelihood the district court will grant leave to appeal. *See, e.g., In re Enron Corp.*, 2006 WL 2400411, at *1 (Bankr. S.D.N.Y. 2006) ("the relevant 'possibility of success' is the possibility that the District Court will grant the Defendants' leave to file an interlocutory appeal, not the possibility that the Defendants will succeed on the merits of that appeal."); *In re Blockfi, Inc.*, 2024 WL 358112, at *3 (Bankr. D.N.J.) (same); *In re Davis*, 2012 WL 4343761, at *2 (Bankr. D.S.C.) (same).

    Plaintiff has made no showing that the district court is likely to grant its § 158(a)(3) motion for leave to appeal. "Interlocutory appeals have long been disfavored in the law, and properly so." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006); *see also Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 700 (10th Cir. 1995) ("narrowing the exceptional circumstances under which interlocutory appeals may be heard preserves the legislative command of 28 U.S.C. § 1291 that appellate courts only have jurisdiction over final decisions."); *DJRJ, LLC v. U-Swirl, Inc.*, 2017 WL 7733048, at *1 (N.D. Okla.) ("interlocutory appeals are disfavored 'and should only be granted in exceptional circumstances.'"); *Swindall v. Jacobson*, 2018 WL 11476527, at *1 (D. Utah) ("Generally, interlocutory appeals are reserved for 'exceptional circumstances,' because they 'contravene the judicial policy opposing piecemeal litigation and the disadvantages of delay

and disruption associated with it.'") (footnotes omitted); *Sperry v. Wildermuth*, 2018 WL 2134078, at *1 (D. Kan.) ("interlocutory appeals are not favored and should be granted only in exceptional circumstances"); *In re Denton*, 236 B.R. 418, 419 (10th Cir. BAP 1999) (leave should be given only in exceptional circumstances).

Courts in the Tenth Circuit grant leave to file an interlocutory appeal under § 158(a)(3) only "when (1) the order involves a controlling question of law, (2) over which there is substantial ground for difference of opinion, and (3) the resolution of which will materially advance the ultimate termination of the litigation." *In re Nucor, Inc.*, 116 B.R. 246, 247 (D. Colo. 1990); *see also In re Van Gaston*, 2020 WL 7183057, at *1 (Bankr. D. Colo.) (same); *In re American Freight System, Inc.*, 194 B.R. 659, 661 (D. Kan. 1996) (same); *In re Fox*, 241 B.R. 224, 232 (10th Cir. BAP 1999) (same); *Furr's Supermarkets, Inc. v. Richardson & Richardson, Inc.*, 315 B.R. 776, 780 (D.N.M. 2004) (same).[5]

Plaintiff has made no attempt to carry its burden in this Court of showing that the order denying remand involved a controlling question of law as to which there is substantial ground for difference of opinion, nor that immediate appeal from the order could materially advance the ultimate termination of the litigation. In other words, Plaintiff has not shown, or attempted to show, that the district court likely will grant Plaintiff's motion for interlocutory appeal.

2. <u>The threat of irreparable harm absent a stay</u>. In *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256 (10th Cir. 2004), the Tenth Circuit stated:

> Determining whether irreparable harm exists can be a difficult and close question. We have noted that "[t]he concept of irreparable harm ... 'does not readily lend itself to definition,'" *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250 (citation omitted), nor is it "an easy burden to fulfill." *Greater Yellowstone*

---

[5] This test, which comes from § 1292(b), is universally applied by district courts and bankruptcy appellate panels when addressing § 158(a)(3) motions. *See, e.g., In re Bailey*, 592 B.R. 400, 408-09 (1st Cir. BAP 2018) (collecting cases).

> *Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). In defining the contours of irreparable harm, case law indicates that the injury "must be both certain and great, and that it must not be merely serious or substantial." *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250 (internal citation and quotations omitted).

356 F.3d at 1262. "[A] plaintiff must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *New Mexico Department of Game and Fish v. U.S. Department of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 751-52 (10th Cir. 2016)). "[O]ur precedent instructs that the injury must be 'both certain and great,' not 'merely serious or substantial'; incapable of being 'adequately atoned for in money'; or of the sort that 'the district court cannot remedy following a final determination on the merits.'" *Hunter v. Hirsig*, 614 Fed. Appx. 960, 962 (10th Cir. 2015).

There has been no showing that Plaintiff would suffer irreparable harm unless the proceeding is stayed.

3. <u>The absence of harm to opposing parties if the stay is granted</u>. A good summary of the stay pending appeal analysis, including this element, is found in *In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015):

> To sum up, all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we "balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the [ ] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis." *In re Forty–Eight Insulations* [*Inc.*, 115 F.3d 1294, 1300–01 (7th Cir. 1997) ] (internal citation omitted).

802 F.3d at 571. There has been no showing that the Defendants would not be harmed, nor about the balance of the harms if the stay were granted. Furthermore, Plaintiff has not made the requisite showings on the first two factors.

4. <u>The public interest</u>. There has been no showing that the public interest would be promoted by a stay. In addition, Plaintiff has not made the requisite showing on the first two factors, *Revel AC*, 802 F.3d at 571, so analysis of this factor is unnecessary.

In sum, Plaintiff made no attempt to carry its burden of showing entitlement to a stay pending appeal. The alleged informal motion for a stay will be denied.

## Conclusion

Plaintiff's appeal of the Court's denial of the remand/abstention motion does not come within the collateral order doctrine. Therefore, unless and until the district court grants Plaintiff's motion for leave to appeal the remand order, the Court retains jurisdiction to proceed in this matter. In addition, Plaintiff's informal motion for a stay pending appeal, which is procedurally deficient and lacks evidentiary support, will be denied. Separate orders will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Court

Entered: August 12, 2024
Copies to: counsel of record