UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

HRV SANTA FE, LLC,

    Plaintiff,

v.                                                                                                                              Adv. Proc. 24-01002-t

JAY WOLF; JUNIPER INVESTMENT
ADVISORS, LLC; JUNIPER REAL ESTATE,
LLC; JUNIPER CAPITAL PARTNERS, LLC;
JUNIPER BISHOPS MANAGER, LLC; JUNIPER
BISHOPS, LLC; JUNIPER BL HOLDCO, LLC;
JUNIPER BL PROPCO, LLC; ALEX WALTER;
BRAD BROOKS; and MICHAEL NORVET,

    Defendants,

BL SANTA FE (HOLDING), LLC,

    Nominal Defendant.

## OPINION

Before the Court is the Defendants' motion to transfer the venue of this removed adversary proceeding to the United States Bankruptcy Court, District of Delaware. Plaintiff opposes the motion. The contested matter has been fully briefed and argued. The Court finds and concludes that the motion is not well taken and will be denied.

A.     <u>Facts</u>.[1]

For the limited purpose of ruling on the motion, the Court finds:

---

[1] The Court took judicial notice of the docket in this case and the Delaware bankruptcy case of BL Santa Fe, LLC and BL Santa Fe (Mezz), LLC, case no. 21-11190 (MFW). *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (approving such judicial notice); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (same). The Court also admitted certain facts gleaned from Plaintiff's complaint and Mr. Holland's affidavit, as requested by Defendants on August 13, 2024.

### Bishops Lodge in Santa Fe, New Mexico

This dispute involves the Bishops Lodge resort and hotel in Santa Fe, New Mexico (the "Resort"). Before 2021, the Resort was owned and operated by BL Santa Fe, LLC ("Resort Owner"). Resort Owner, in turn, was wholly owned by BL Santa Fe (Mezz), LLC ("Mezz"), which is wholly owned by BL Santa Fe (Holding), LLC ("Holding"). Holding is owned principally by four members: Evolution RE Bishops Lodge, LP ("Evolution"); Nunzio DeSantis ("DeSantis"); BL Resort Investment, LLC ("BL Resort Investment"); and HRV Santa Fe, LLC ("HRV") (together, the "Members"). Evolution, DeSantis, and BL Resort Investment own more than half of the membership interests in Holding (together, the "Majority Members"). From 2017 to December 16, 2020, HRV was the manager of Holding, Mezz, and Resort Owner. HRV is owned and controlled by Richard Holland ("Holland").

### Senior and Mezzanine Loans

Fortress Credit Co. LLC (together with its successors, "Senior Lender") made a loan to Resort Owner (the "Senior Loan"). The Senior Loan was secured by the assets of Resort Owner.

On June 14, 2019, Juniper Bishops, LLC ("Juniper Bishops" or "Mezzanine Lender") made a $15,000,000 "mezzanine" loan to Mezz (as modified, the "Mezzanine Loan," and together with the Senior Loan, the "Secured Loans") to fund renovation of the Resort (the "Project"). The Mezzanine Loan was secured by Mezz's 100% membership interest in Resort Owner.

### Events Leading to the Bankruptcy Cases

The Project fell behind schedule and was over budget. Concerns about defaulting on the Secured Loans arose in mid-2020. On December 15, 2020, the Majority Members voted their membership interests to amend the company charter documents and to remove HRV and Holland

from their positions as officers and managers of Holding, Mezz, and Resort Owner. On December 16, 2020, the Majority Members appointed a board of managers comprised of Brad Brooks, Michael Norvet, DeSantis, and Alex Walter (the "Board of Managers").

Holland and HRV disputed their removal from management. They contended that the removal was contrary to the governing corporate documents and was void. Holland refused to acknowledge the new governing structure of Holding and continued to hold himself out as the manager and controlling officer of Holding, Mezz, and Resort Owner.

In January 2021, Holland, Juniper Bishops, and the Board of Managers understood that additional capital would be required to fund completion of the Project. Holding's members were unwilling or unable to contribute additional equity, so they looked for a replacement lender(s). One prospective lender/investor was Andrew Blank ("Blank"), who said he was interested in infusing equity into the Project and paying off Juniper Bishops. Another prospective lender/investor was Juniper Bishops itself, which offered a term sheet to refinance the project in February of 2021.

In April 2021, Juniper Bishops submitted an updated term sheet (the "April Term Sheet"). The April Term Sheet was signed by the Majority Members but not by Holland or HRV. Also in April, HRV on behalf of Holding signed a term sheet with Blank (the "Blank Term Sheet"). None of Holding's Board of Managers signed the Blank Term Sheet. Upon learning of the Blank Term Sheet, Juniper Bishops withdrew the April Term Sheet.

On April 7, 2021, Juniper Bishops declared Mezz in default on the Mezzanine Loan. On April 19, 2021, Juniper Bishops gave notice that it would foreclose its sole collateral, the 100% membership interest of Resort Owner, at a public sale. Mezz told Juniper Bishops it was prepared to file bankruptcy if the sale was not postponed. Juniper Bishops postponed the sale several times.

## The Bankruptcy Cases

On August 30, 2021, Resort Owner and Mezz (together the "Debtors") filed voluntary chapter 11 cases in the United States Bankruptcy Court for the District of Delaware, commencing jointly administered chapter 11 cases (the "Bankruptcy Cases"). On the petition date, the Debtors filed a motion for approval of debtor-in-possession financing and related relief (the "DIP Financing Motion"). In accordance with the DIP Financing Motion, Juniper Bishops agreed to provide Mezz with postpetition financing of about $5,800,000, to fund the Debtors' operations during the Bankruptcy Cases.

On September 16, 2021, HRV objected to the DIP Financing Motion. HRV proposed to replace the DIP financing from Juniper Bishops with a purported 0% interest loan (but with a 15% default interest rate) provided by Mr. Blank. The Delaware bankruptcy court, Judge Walrath, held two hearings on the DIP Financing Motion and HRV's objection. Ultimately, the court overruled HRV's objection and granted the DIP Financing Motion.

## The Plan and Disclosure Statement

On the petition date, the Debtors filed a joint plan of reorganization and a joint disclosure statement. On October 14, 2021, the Debtors filed an amended plan of reorganization (the "Plan"). The Plan generally provided for Mezz to convey 100% of the membership interest in Resort Owner to Juniper BL HoldCo, LLC ("JBL HoldCo"). In return, the Mezzanine Loan would be deemed paid in full; JBL HoldCo would finance the completion of the Resort renovations and its operations; the Senior Loan would be restructured; and Mezz, Juniper Bishops, and JBL HoldCo would sign an equity participation agreement, under which Mezz would be entitled to receive

certain "back-end distributions."[2] In addition, Mezz agreed to hold Juniper Bishops and JBL HoldCo harmless from all claims and suits relating to or arising out of the Plan and the Bankruptcy Cases.

Under the Plan, Mezz released its claims against Juniper Bishops, its affiliates, and Debtors' management. Holding did not release any claims. Holding's membership interest in Mezz was separately classified and Holding was allowed to retain it.

All classes entitled to vote on the Plan accepted it. Holding's equity interest was deemed unimpaired, so it did not get to vote.

On October 8, 2021, HRV objected to confirmation of the Plan. It argued:

> The Debtors' execution and implementation of the [Restructuring Support Agreement][3], without consideration of other alternatives that offer a better return for the estate and all stakeholders . . . [is a] dereliction of duty to the estate and its stakeholders . . . .
>
> Mr. Blank put forward an objectively better plan with committed equity and debt financing, including a 0% interest unsecured DIP Loan. . . .
>
> A reasonable fiduciary would have used Mr. Blank's proposal to push the Mezzanine Lender to improve its terms; these Debtors have not. A reasonable fiduciary would have communicated with equity participants how it concluded that the current Plan is superior to Mr. Blank's plan; these Debtors have not. . . . [and]
>
> [The Debtors'] failure to consider better alternatives persists to this day. The Debtors received Mr. Blank's competing proposal weeks ago, but have failed meaningfully to engage with Mr. Blank. Instead, for reasons that the Debtors fail to disclose, they are continuing forward with a flawed proposal without disclosing to the constituents and mom and pop investors the existence of a proposal that would provide the likelihood of meaningful results for equity in the reorganized debtor.

---

[2] In very general terms, the equity participation agreement provides that if profits are sufficient or the Resort is sold, Mezz would receive a distribution of 70% of the net profits/sale proceeds, after deducting the total of the loans and other capital contributions of Juniper, including accrued interest thereon of 30% APR; provided further that the payment to Juniper must be at least 190% of its total loans and capital contributions.

[3] An agreement signed by Juniper Bishops, the Board of Managers, and others shortly before the Bankruptcy Cases were filed, outlining the terms of the restructuring (the "RSA").

The Confirmation Hearing

On October 19, 2021, Judge Walrath held an evidentiary hearing on confirmation of the Plan. The court heard testimony from five witnesses—Messrs. Mack, DeSantis, Wolf, and Blank, and the debtors' expert witness, Dr. Scott Hakala. HRV's counsel actively participated in the confirmation hearing. He cross-examined Messrs. Mack, Wolf, Hakala, and DeSantis. In addition, HRV's counsel called Blank to testify.

During closing argument, HRV's counsel argued that the court should not confirm the Plan because the debtors did not act in good faith in discharging their fiduciary duties:

> So I think what that tends to go to, Your Honor, is the Debtors' good faith in discharging their fiduciary duties in having what they tried to portray to Your Honor as a good process, and I'm not sure that process really got there. . . . The Debtors, for instance, never countered any of Mr. Blank's terms . . . .

At the conclusion of the hearing, Judge Walrath ruled that "the Debtors' conclusion to proceed with the Plan, which is based on the RSA, meets its fiduciary duty because it is the highest and best path forward for the Debtor to restructure the Debtors' principal asset, the Resort." The court found that the Blank alternative proposal was inferior to the transaction proposed through the Plan. Specifically, the court stated:

> Based on the evidence presented, I am convinced that the competing proposal submitted by Mr. Blank has serious drawbacks, which does make it less attractive, not simply as evidenced by the Debtors' conclusion, the vote by creditors and equity, but from the Court's own analysis based on the testimony and exhibits presented.

The court overruled HRV's objection and confirmed the Plan on October 21, 2021, pursuant a written confirmation order that incorporated the court's oral findings of fact and conclusions of law made two days before. In the confirmation order, the court found:

> The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, this Court has considered the totality of the circumstances in these

-6-
Case 24-01002-t    Doc 90    Filed 08/30/24    Entered 08/30/24 13:47:32 Page 6 of 18

Chapter 11 Cases, the Plan itself and the process leading to its formulation and proposal. The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtors and their principal creditor constituencies, reflects substantial input from such constituencies, and achieves the goal of reorganization embodied by the Bankruptcy Code.

The court also ruled that "all Objections to the approval of the Disclosure Statement or confirmation of the Plan and any reservation of rights contained therein . . . are hereby OVERRULED in their entirety and on their merits for the reasons set forth on the record of the Confirmation Hearing . . . ."

The confirmation order states that "the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interest (irrespective of whether such Claims or Interests are deemed to have accepted the Plan) . . . ." The confirmation order retained for the Delaware bankruptcy court "exclusive jurisdiction over all matters arising out of, or related to, the Bankruptcy Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code . . . ." The Plan became effective on October 29, 2021, and has been substantially consummated.

The Derivative Action, Removal, and Motion to Remand or Abstain

Plaintiff filed this proceeding on December 15, 2023, in the First Judicial District Court, State of New Mexico. In its derivative complaint, Plaintiff asserted three causes of action against the Defendants: that Juniper Bishops breached fiduciary duties to Holding (Count I); that Juniper Bishops aided and abetted the Majority Members' breaches of fiduciary duty to Holding (Count II); and that all Defendants entered into a civil conspiracy to marginalize, circumvent, and damage Plaintiff by favoring the Juniper Bishops' restructuring proposal rather than Blank's (Count III). As a result of the alleged unlawful actions, Plaintiff alleged that it was damaged because Mezz lost all the equity value in Resort Owner. In its prayer for relief Plaintiff asked for damages, including

punitive damages, and for an order that the Juniper defendants "disgorge all payments received by them from any party including BL Holding, BL Mezz, BL Santa Fe, and/or any members of BL Holding, for work performed in connection with the redevelopment of the Bishop's Lodge resort." Plaintiff demanded a jury trial of all claims.

Defendants removed the state court action to this Court on January 12, 2024. On February 9, 2024, Plaintiff filed an amended complaint that added two additional counts—a tortious interference claim against Juniper Bishops and a breach of fiduciary duty against three new defendants—Messrs. Walter, Brooks, and Norvet. On June 4, 2024, the Court denied Plaintiff's motion to remand the proceeding or abstain from hearing it.

HRV is a Georgia limited liability company with its principal place of business in Santa Fe, New Mexico. Holland resides in Santa Fe, New Mexico. Holding, Mezz, and Resort Owner are all Delaware limited liability companies, as are all of the Juniper Defendants. Defendant Jay Wolf resides in Los Angeles, California. Defendant Walter resides in Tampa, Florida. Defendant Norvet resides in Aubrey, Texas. Defendant Brooks resides in Frisco, TX. DeSantis resides in Dallas, Texas.

The Plan has been substantially consummated. There is no longer any bankruptcy estate to administer; under the confirmed Plan, all estate assets were transferred to the reorganized debtors. Although the bankruptcy cases remain pending, there is little activity; the only pending matter is a claim objection, unrelated to this proceeding.

B. <u>Transfer of Venue Under § 1412</u>.[4]

Under § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Although

---
[4] Unless otherwise specified, all statutory references are to 28 U.S.C.

there is debate about the scope of "a case or proceeding under title 11," the Court holds that § 1412 applies to *all* adversary proceedings.[5]

Section 1412 is written in the disjunctive, meaning that the Court is granted discretionary authority to transfer venue of a proceeding *either* in the interest of justice *or* for the convenience of the parties. *See, e.g., A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's, Inc.),* 227 B.R. 311, 324 (Bankr. N.D. Ala. 1998) ("Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferrable upon a sufficient showing of either the interest of justice or for the convenience of the parties."); *see also Yellow Corp. v. Teamsters*, 2023 WL 6645803, at *7, n.38 (same); *Velocity v. Meta Media Tech, Inc.*, 2023 WL 4744290, at *3 (N.D. Ohio) (same); *Hunters Run Property Owners Assoc., Inc. v. Centerline Real Estate, LLC*, 2023 WL

---

[5] The case law is split about what the phrase "case or proceeding under title 11" means. The Tenth Circuit has not construed the phrase. Some courts have held that the phrase means that § 1412 does not apply to proceedings for which the court has only "related to" jurisdiction under § 1334(b). *See, e.g., Yellow Corp. v. International Brotherhood of Teamsters,* 2023 WL 6645803, *4 (D. Colo.), *citing Multibank, Inc. v. Access Global Capital, LLC,* 594 B.R. 618 (Bankr. S.D.N.Y. 2018); *Shaver v. Orthodontic Ctrs. Of Colo., Inc.,* 2007 WL 38665, at *2 (D. Colo.); *Angell v. Shell Oil Co.,* 2004 WL 7337807, at *2 (D.N.M.). These courts held that for "related to" proceedings, venue transfer is governed by § 1404(a) rather than § 1412. Other cases have construed the phrase more broadly, so that § 1412 applies to all adversary proceedings, including "related to" proceedings. *See, e.g., Dunlap v. Friedman's, Inc.,* 331 B.R. 674, 677 (S.D. W. Va. 2005); and *City of Liberal, Kansas v. Trailmobile Corp.*, 316 B.R. 358, 362 n. 2 (D. Kan. 2004) (collecting cases); *see also Collier on Bankruptcy* ¶ 4.04[1] (16th ed) (favoring the broader reading of § 1412). The Court agrees with the broader construction of the phrase, for three reasons. First, the phrase is unique; it is not simply the language in § 1334(b) minus the "related to" portion. In the Court's opinion, the most reasonable reading of the phrase is that § 1412 includes all adversary proceedings. Second, the predecessor of § 1412, § 1475, gave bankruptcy courts authority to transfer all proceedings, including "related to" proceedings. It is unlikely Congress intended to reduce the transfer authority when it gave it to the district courts instead of the bankruptcy courts. Third, the narrow reading can hamstring district courts from transferring venue when (as often happens) a state court action is filed against a party who later files a bankruptcy case in a different jurisdiction. If the debtor removes the action postpetition, § 1404(a) does not allow the district court to transfer the proceeding to the bankruptcy case forum if the proceeding could not have been brought in that forum originally. Because of that problem, § 1404(a) does not work well for adversary proceedings. For these reasons, the Court finds that the broad interpretation is what Congress probably intended.

2584997, at *3 n.2 (S.D. Fla.) (same); *Tang v. Citic Capital Holdings Ltd.*, 2022 WL 6036573, at *5 (D.N.J.) (same).

C.     The Court's Discretion; Burden of Proof.

Whether to grant a motion to transfer venue of an adversary proceeding pursuant to § 1412 is within the sound discretion of the bankruptcy court. *See, e.g., Los Alamos Nat'l Bank v. Friedlander (In re Potter),* 2008 WL 11447920, *10 (Bankr. D.N.M.) ("The decision to transfer or retain a case under 28 U.S.C. § 1412 is a matter of discretion"); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 149 B.R. 365, 368 (Bankr. S.D.N.Y. 1993) (same); *Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 208 (Bankr. W.D. Tex. 2015) (same); *In re Hechinger Inv. Co. of Del., Inc., v. M.G.H. Home Improvement, Inc. (In re Hechinger Inv. Co. of Del., Inc.)*, 288 B.R. 398 (Bankr. D. Del. 2003) (same).

The movant has the burden of establishing that the case or proceeding should be transferred by a preponderance of the evidence. *See, e.g., Yellow v. Teamsters,* 2023 WL 6645803, *7 ("Plaintiffs carry the burden of showing it is warranted by a preponderance of the evidence"); *Think3*, 529 B.R. at 208 (same); *Hechinger,* 288 B.R. at 402 (same) (citations omitted); *Finley, Kumble*, 149 B.R. at 368-69 (same). The burden is sometimes described as "heavy." *See, e.g., Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982) ("a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor."); *In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008) (quoting *Lionel*); *In re DDMD Trucking, Inc.*, 2015 WL 381299, at *4 (Bankr. D.N.M.) (quoting *Dunmore*). Another court opined that it should exercise the power to transfer venue "cautiously." *In re Miller*, 2015 WL 13604250, at *7 (C.D. Cal.).

D.     Transfer for the "interest of justice."

The first basis for transferring venue is if the transfer is "in the interest of justice." § 1412; Fed. R. Bankr. P. 1014(a)(2). This is an "extraordinarily nebul[ou]s concept." *In re W. Coast Interventional Pain Med., Inc.,* 435 B.R. 569, 583 (Bankr. N.D. Ind. 2010). "The 'interest of justice' prong is 'a broad and flexible standard which must be applied on a case-by-case basis.'" *Bruno's,* 227 B.R. at 324 (quoting *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products)*, 896 F.2d 1384, 1391 (2d Cir. 1990).

> Different courts have applied different factors to determine what is in the interest of justice for resolving a change of venue request. Having considered the factors in those cases, this Court finds the following factors applicable:
>
> (a) Economics of estate administration;
> (b) Presumption in favor of the "home court;"
> (c) Judicial efficiency;
> (d) Ability to receive a fair trial;
> (e) The state's interest in having local controversies decided within its borders, by those familiar with its laws;
> (f) Enforceability of any judgment rendered; and
> (g) Plaintiff's original choice of forum

*Bruno's*, 227 B.R. at 324-25 (footnotes omitted); *see also Think3*, 529 B.R. at 209 (applying the *Bruno's* factors); *Manville Forest Products Corp.*, 896 F.2d at 1391 (listing efficient administration, judicial economy, timeliness, and fairness as factors to consider); *Kaiser Grp. Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Grp. Int'l, Inc.),* 421 B.R. 1, 19 (Bankr. D.D.C. 2009) (citing the *Bruno's* factors).

The Court weighs the factors as follows:

1. <u>The economics of estate administration</u>. Often, efficient estate administration is promoted if all adversary proceedings are before the bankruptcy judge presiding over the main case. Here, the economics of estate administration will not be affected one way or the other by a transfer of venue. Debtors' joint chapter 11 plan was confirmed on October 21, 2021. The plan has been substantially consummated. The bankruptcy estate is no more; further administration is not

possible. The only matter pending in the Bankruptcy Cases is an objection to two claims. Given the lack of an estate to administer, this factor is neutral.

    2.    <u>Presumption in favor of the "home court</u>." The court presiding over the main bankruptcy case often presides over adversary proceedings filed in the case. This avoids piecemeal litigation, which can be inefficient and uneconomic. *See, e.g., In re Bruno's*, 227 B.R. at 327 (discussing the view that transferring the proceeding to the "home court" would promote the economic and efficient administration of the estate, and citing cases); *Bank of America v. Nickele*, 1998 WL 181827, at *5 (E.D. Pa.) (same); *see also, Collier on Bankruptcy* ¶ 4.05[1] (16th ed) ("a presumption has developed that civil proceedings should be tried in the 'home' court."). However, as pointed out in *Bruno's*, Congress did not intend for adversary proceedings to be heard solely by the home court. *Id.*, citing Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings,* 62 Am. Bankr. L.J. 37, 38 (1988). Indeed, there are many examples of "outpost" courts declining to transfer venue despite the home court presumption. *See, e.g., Angell v. Shell Oil Co.*, 2004 WL 7337807 (D.N.M.); *Yellow Corp. v. Teamsters*, 2023 WL 6645803; *In re James*, 2012 WL 5467542 (Bankr. D. Colo.); *Ni Fuel Co., Inc. v. Jackson*, 257 B.R. 600 (N.D. Okla.); *In re Abengoa Bioenergy Biomass of Kansas, LLC*, 2016 WL 1703927 (Bankr. D. Kan.); *Shaver v. Orthodontic Centers of Colorado, Inc.*, 2007 WL 38665 (D. Colo.) (the home rule presumption is canceled by the "plaintiff's choice of forum presumption"); *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90 (Bankr. S.D. Tex. 2009); *Lowe v. Carlile Patchen & Murphy (In re Deeproot Capital Management, LLC)*, 2024 WL 2703951 (Bankr. W.D. Tex.); *Manville Forest Products*, 895 F.2d at 1384.

    Here, the presumption of the home court is substantially weakened by the fact that the Bankruptcy Cases are practically over. This proceeding's main connection to the Bankruptcy Cases

is whether claim and/or issue preclusion will apply. The usual concerns about efficient estate administration do not apply. There is no estate.

Defendants argue that transferring the venue to Delaware would allow Judge Walrath to construe her confirmation order, which may be necessary in connection with the preclusive defenses that will certainly be raised. That is a good argument and weighs in favor of transfer. Its weight should not be overstated, however. With preclusive defenses, which are very common, the later court is often called upon to construe the prior court's orders and judgments. Preclusion cases are not sent back to the prior court. Here, it would be a routine matter for the Court to construe Judge Walrath's confirmation order to rule on a preclusion defense.

3. <u>Judicial efficiency</u>. Judicial economy includes the "efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources." *Black's Law Dictionary*, (12th ed. 2024). "Included in 'judicial efficiency' are familiarity with the substantial issues in the removed state action and familiarity with the law to be applied in the action (i.e., the 'learning curve')." *Bruno's,* at n. 47. There is no evidence that it would be more efficient to try the proceeding in Delaware. Because of the jury trial demand, trial will be in a district court, not a bankruptcy court. The Delaware bankruptcy court's familiarity with the Bankruptcy Cases therefore may not be of much assistance. There is no evidence that one district court could try the proceeding more efficiently than the other. Further, this proceeding has been pending in New Mexico longer (seven months) than it took to obtain plan confirmation in Delaware (two months). The Court has become quite familiar with both the pending adversary proceeding and the litigation that took place in the Bankruptcy Cases. This factor is neutral.

4. <u>Ability to receive a fair trial</u>. This factor "requires evidence that the court had a predisposition to rule in favor of one party or another or if there was concern about getting an

impartial jury." *Think3*, 529 B.R. at 210. There is no evidence of such a predisposition by either court or that Plaintiff, or any other party, would not receive a fair trial in either venue. This factor is neutral.

5. <u>The state's interest in having local controversies decided within its borders, by those familiar with its laws</u>. This factor weighs in favor of denying the motion. Although Delaware unquestionably had jurisdiction over the Bankruptcy Cases, it has no connection to the Resort. In contrast, the Resort is an important historical site in Santa Fe, New Mexico.[6] It provides employment to Santa Fe residents and generates revenue that benefits the State of New Mexico and area businesses. New Mexico is a more appropriate forum to resolve a dispute involving the Resort.

Because the Debtors and Holding are Delaware limited liability companies, Defendants' fiduciary duties are governed by Delaware law. *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (the state where an entity is organized is the only state with authority to regulate the entity's internal affairs; otherwise the entity could be faced with conflicting demands); *In re Fedders N. Am. Inc.*, 405 B.R. 527, 538-39 (Bankr. D. Del. 2009) (citing *Edgar*). To some extent, this weighs in favor of transferring venue to Delaware. Nevertheless, Delaware corporate and business law is well known and widely applied by courts throughout the country. *See, e.g., In re Think3*, 529 B.R. at 172 (Texas bankruptcy court applying Delaware law concerning director breach of fiduciary duty); *Bell v. Sorin CRM USA, Inc.*, 2022 WL 4241671, at *2 (10th Cir.) (applying Delaware contract law); *Abengoa Bioenergy Biomass of Kansas, LLC*, 958 F.3d 949, 960 n.7 (10th Cir. 2020) (applying Delaware rules of equity); *City of Cambridge Retirement System v. Ersek*, 921 F.3d 912,

---

[6] *See, e.g.,* Willa Cather, *Death Comes for the Archbishop* (1927). The Bishop's Lodge was home to New Mexico's first archbishop, Jeane Baptiste Lamy (1814-1888).

918 (10th Cir. 2019) (applying Delaware corporate law). The presence of out-of-state entities and the need to apply foreign law does not mean that New Mexico courts cannot or should not preside over controversies affecting significant New Mexico landmarks.

6. <u>Enforceability of any judgment rendered</u>. This factor is neutral. There is no evidence that a judgment entered by a New Mexico court would be less enforceable than a judgment entered by a Delaware court. If a judgment is obtained, it would have to be domesticated in various jurisdictions to be collected regardless of where it is issued.

7. <u>Plaintiff's original choice of forum</u>. There is a "strong presumption in favor of the Plaintiff's choice of forum." *Shaver v. Orthodontic Centers*, 2007 WL 38665, at *2 (quoting *Official Committee of Asbestos Claimants v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004)). Had the Bankruptcy Cases been pending and active (say, pre-confirmation), the presumption in favor of the "home court" would have canceled out the choice of forum presumption. However, with the bankruptcy cases effectively over, the strong presumption in favor of Plaintiff's choice of forum weighs against transferring venue to Delaware.

Weighing the interest of justice factors, the Court finds that factors 1, 3, 4, and 6 are neutral, factor 2 slightly favors transfer, and factors 5 and 7 favor retention. The Court therefore finds and concludes that defendants have not carried their burden, heavy or otherwise, of proving that venue should be transferred in the interest of justice.

E. <u>Transfer for the "convenience of the parties."</u>

In *Think3*, the court gave six factors to weigh in determining whether the convenience of the parties requires a transfer of venue of an adversary proceeding under § 1412:

(a) Location and proximity of the parties;
(b) Ease of access to necessary proof;
(c) Convenience of witnesses, including their location and proximity;
(d) Location of the assets, including books and records;

(e) Availability of subpoena power for the unwilling witnesses; and
(f) Expenses related to obtaining witnesses.

529 B.R. at 211; *see also In re Bruno's*, 227 B.R. at 325 (citing the same factors); *In re Kaiser Group*, 421 B.R. at 22 (citing similar factors); *Frenlin v. Oakwood Homes Corp.*, 292 B.R. 369, 388 (Bankr. E.D. Ark. 2003) (same factors). The Court weighs these factors:

1. <u>Location and proximity of the parties</u>. This factor weighs against transferring venue. Mr. Holland lives in Santa Fe. Mr. Wolf lives in California. Mr. Brooks and Mr. Norvet live in Texas. Only Mr. Walter, who lives in Florida, is closer to Delaware than New Mexico.

2. <u>Ease of access to necessary proof</u>. There is no evidence relating to this factor. The Resort is in Santa Fe, but the Court does not know the location of any necessary proof.

3. <u>Convenience of witnesses, including their location and proximity</u>. If the witnesses will include Messrs. Holland, Wolf, Walter, Brooks, and Norvet, then the factor weighs against transferring venue. Other than Mr. DeSantis, who lives in Dallas, Texas (much closer to New Mexico than Delaware), there is no evidence about where other witnesses might live.

4. <u>Location of the assets, including books and records</u>. There is no evidence on this point. The Resort is in Santa Fe.

5. <u>Availability of subpoena power for the unwilling witnesses</u>. This Court, like the Delaware court, has subpoena power as outlined and limited by Fed. R. Civ. P. 45(c). *See* Fed. R. Bankr. P. 9016. As there is no evidence about who the witnesses might be, this factor is neutral.

6. <u>Expenses related to obtaining witnesses</u>. There is no evidence on this point. If the witnesses would be Messrs. Holland, Wolf, Walter, Brooks, DeSantis, and Norvet, then the factor weighs against transferring venue.

Based on the meager record, the Court finds that none of the factors favor transfer to Delaware and that factors 1 and 3 favor retention. The Court therefore finds and concludes that

Defendants have not carried their burden of proof showing that the convenience of the parties would be better served by transferring the proceeding to Delaware.

F.  The Result Would be the Same if § 1404(a) Applied.

If § 1404(a) applied rather than § 1412, the result would be the same. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

In the Tenth Circuit the following factors are weighed when considering a motion to transfer venue under § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). The factors are very similar to those discussed in the § 1412 analysis.

Defendants have not carried their burden of proving that either the interest of justice or the convenience of parties and witnesses favor a transfer of this proceeding to Delaware. As both prongs must be shown under § 1404(a), *see, e.g., Yellow v. Teamsters*, 2023 WL 6645803, at *7 n. 38 (citing *In re Adkins Supply, Inc.*, 2015 WL 1498856, at *6 (Bankr. N.D. Tex.)), the motion would fail under § 1404(a).

## Conclusion

Defendants have not carried their burden of proving that transferring this proceeding to Delaware is in the interest of justice or would be more convenient for the parties. The Court will enter a separate order denying the motion to transfer venue.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 30, 2024
Copies to: counsel of record